ETTER *v.* STATE.

(*Knoxville*, September Term, 1947.)

Opinion filed October 23, 1947.

LADD, CARSON & HOLTSINGER, of Clinton, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Etter was indicted, tried and convicted for the homicide of William Masters. He was convicted of voluntary manslaughter with his punishment fixed at two years imprisonment.

On the night of March 8, 1946, Etter, the deceased and others were drinking whiskey and shooting craps in one of the men's dormitories at Oak Ridge. Before the crap game started, Etter did not know Masters. After shooting craps until after midnight the occupant of the room where they were, asked them to leave. They went to Etter's room and there continued the game. Masters soon lost all his money. He then prepared to leave when Etter gave him $5. because he did not want Masters to leave broke and because Masters lived several miles away and it was necessary that he get a cab home.

Etter then ate some cheese and crackers and retired to the wash room. While he was in the wash room, Masters returned and pushed open the door to the wash room and said: "You are going to give my money back, you damn son-of-a-bitch." At this time Masters had something in his hand and drew back to strike Etter, Etter ducked and the rock Masters threw missed Etter. Masters then struck Etter with his fist. He said he was going to kill Etter.

As the above was happening, Etter drew a pocket knife from his pocket and stabbed Masters in the abdomen. Masters then left and went up into the lobby of the dormitory. Etter washed his hands and left his knife by the drinking fountain and then also went up into the lobby. Masters was lying on the floor. He soon died as a result of this knife wound. Etter made no further assault but soon gave himself up to the officers who shortly arrived on the scene.

The above facts are almost wholly gathered from voluntary statements Etter gave the officers. He testified herein in his own defense and to all intents and purposes tells the same story. Etter was a larger man than Masters, weighing about 30 pounds more. Etter is a man 44 years of age while the deceased was 34 years of age. After the homicide the officers say Etter was intoxicated. In one of the statements made by the plaintiff in error he says the deceased had his hand in his pocket, in the other statement he did not so claim.

On June 7, 1946, the plaintiff in error was arraigned and brought to trial. The jury was selected and sworn and testimony introduced. At the noon recess one of the jurors became separated from the others and the officer. Defense counsel was informed of this fact. Apparently the trial Judge was also informed of the fact because after court had convened after lunch the trial judge called defense counsel to the bench and was in the process of asking counsel if he would waive the matter when counsel responded, ''we are not in a position to waive any possible defense which our client might have in this case.'' This was also the position of the defense after conferring with the plaintiff in error. There was no ''public statement'' (meaning no announcement from the bench to those in the court room of what was going on or said) by

the judge as to what he conferred with counsel for the respective parties about. After the statement of counsel that they would waive no rights the trial judge declared a mistrial.

The case came on for trial again on October 9, 1946, when the conviction here complained of was had. On September 23, 1946, a plea of former jeopardy, based on the above detailed happenings of June 7, 1946, was filed. Necessary proof in support of this plea was heard and the plea overruled.

This appeal is based on two alleged errors: (1) That the plea of former jeopardy should have been sustained and (2) the evidence "preponderates in favor of the innocence of the defendant and against the verdict of the jury."

It is axiomatic that the unexplained separation of the jury in this kind of a case *prima facie* vitiates the verdict. When a separation is shown it would be incumbent on the State or prosecution to show definitely that no communication was had with the juror (this showing must be positive and clear cut) during his absence from his brother jurors. *Long* v. *State*, 132 Tenn. 649, 179 S. W. 315; *Hickerson* v. *State*, 141 Tenn. 502, 213 S. W. 917.

Practically all authorities agree that jeopardy begins when the accused is put upon trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction, and the jury has been impaneled and sworn. In ancient times it was said that a jury once sworn in a "case of life or member" could not be discharged by the court, but must render a verdict. We are not advised as to whether or not this requirement was ever extended to its extreme. Blackstone early realized the absurdity of the extreme

when he recognized that juries in criminal cases might be discharged during the trial in cases of "evident necessity." 4 Bl. Com. P. 361.

The expression "evident necessity" has been expanded and defined in modern times and practice in the necessities of justice to the point where "the court may discharge a jury without working an acquittal of the defendant in any case when the ends of justice, under the circumstances, would otherwise be defeated." 15 Am. Jur. P. 75, sec. 406.

■ It was early recognized in American jurisprudence that the court is to exercise a *sound discretion* on the subject and that this discretion rests in a large measure on the responsibility of the trial judges under their oaths of office. This discretion must be exercised with utmost caution. *United States* v. *Perez*, 9 Wheat. 579, 6 L. Ed. 165. The opinion in the *Perez Case* was by Mr. Justice Story and it has been quoted and following in most jurisdictions since. It was later adopted in *Thompson* v. *United States*, 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146. In *Green* v. *State*, 147 Tenn. 299, 247 S. W. 84, 28 A. L. R. 842, after a full review of the Authorities this court quoted and adopted the statement as taken from *Thompson* v. *United States, supra.*

■ Certain conditions, if arising in the trial of a case, have come to be well recognized as constituting the occasion which will warrant the discharge of a jury, and, if they appear of record, will bar a plea of former jeopardy. These conditions are set forth in Wharton's Criminal Law, Vol. I, page 549, as : "(1) Consent of the prisoner: (2) illness of (a) one of the jurors, (b) the prisoner, or (c) the court: (3) absence of a juryman: (4) impossibility of the jurors agreeing on a verdict: (5) some untoward acci-

dent that renders a verdict impossible; and (6) extreme and overwhelming physical or legal necessity.''

Judge NATHAN GREEN in *State* v. *Curtis*, 24 Tenn. 601, early recognized that the court might exercise his discretion in the matter when he said:

''It may in its discretion supply the place of the sick juror, and proceed to try the case *de novo*, or *discharge the jury* and *continue* the *cause.''*

█ This case also is authority for the proposition that the statute, Code, Sec. 8814, authorizing substitution of a juror is not mandatory but directory only; it is not exclusive but merely cumulative. We can find no cases nor are we cited any that either impliedly or expressly overruled the holding of *State* v. *Curtis, supra*. It is true that in *Green* v. *State, supra*, and in *Manning* v. *State*, 155 Tenn. 266, 292 S. W. 451, jurors were substituted but in neither is it said or contended that the method there used is exclusive.

██ In our effort to see that the rights of persons accused of crimes are protected, we should not overlook the fact that the people also have interests that should be safeguarded. Both the accused and the people have a right to have the case of the accused tried by an impartial jury. If during the trial the judge learns that one of the jurors has been separated from the other jurors and this fact is also known to the accused, as well as the prosecution, can there be any doubt that it is not only his right but his duty to say there either has been a mistrial or that another juror should be empaneled? We have already pointed out that empaneling another juror or jury is not mandatory. It seems obvious to us that the trial judge used his best discretion in the matter. In the absence of a showing to the contrary, we will assume that it would

have been much harder to get a new juror or jury at the present term, who was competent, than it would at a succeeding term.

How can the accused say he has been injured, that any injustice has been done? We frankly cannot see how. At the succeeding term he clearly had all rights that he originally had in the selection of a new jury. He was not prejudiced by the evidence of the prosecution which had been introduced. The fact is he should be materially benefited. Then too, we know that ordinarily the longer a trial of the kind is postponed, the better for the accused.

In sports as well as fair play in human relations opponents are pitted against one another who ordinarily are proportionably matched. It is well recognized principle of law that when one is beset with a single personal assault, not made by one of overpowering strength and force, the resistence thereto must be proportionate to the nature of the assault. In this case, the plaintiff in error was a much heavier man than the deceased. The deceased approached him and attempted to hit him with a rock. The rock missed and the plaintiff in error was struck by the fists of the deceased. During the happenings of these events, the plaintiff in error drew his knife and stabbed the deceased causing his death. We can see no justification for the use of the knife. No weapon, knife or dangerous instrument is shown to have been in the possession of the deceased. The jury evidently believed the statement made by the plaintiff in error, 'that the deceased was drawing his hand out of his pocket' was an afterthought. In one statement the plaintiff in error made such a claim in another he did not.

For the reasons given, all assignments must be overruled and the judgment below must be affirmed.

All concur.