STATE OF TENNESSEE, Petitioner,

*v.*

RICHARD A. BROOKS and DENNIS STEPHEN
DUNCAN, Respondents.

462 S.W.2d 491.

(*Nashville*, December Term, 1969.)

Opinion filed October 5, 1970.

DAVID M. PACK, Attorney General and Reporter,
EVERETT H. FALK, Assistant Attorney General, Nashville,
and NOEL R. BAGWELL, District Attorney General, Clarks-
ville, for petitioner.

BRANDON INGHAM, Clarksville, for Brooks.

RODGER A. BOWMAN, Clarksville, for Duncan.

Mr. Justice Humphreys delivered the opinion of the Court.

Defendants were jointly indicted, and convicted, of armed robbery, and given ten year sentences. The Court of Criminal Appeals reversed, holding that the trial judge should have sustained defendants' plea of former jeopardy. We granted certiorari, and reverse on authority of *Hite v. State,* 17 Tenn. 357 (1836).

Defendants were first indicted for robbing one Johnny Bryant of money belonging to the Red Ace Petroleum Company by the "use of a deadly weapon, to wit: a gun, to wit: a pistol". At the trial the State's evidence was that the robbers used a .22 caliber rifle. On this variance, on the State's motion, a directed verdict of not guilty was entered. Defendants were reindicted for robbery of Bryant with a rifle, and at their trial on this indictment contended by pleas of former jeopardy that their not guilty verdict under the first indictment, for robbery with a pistol, prevented their trial on the second indictment

under both the state and federal constitutions. This plea was overruled, the defendants put to trial, and the result was a verdict of guilty of armed robbery.

With one judge dissenting, the Court of Criminal Appeals reversed defendants' convictions on their pleas of former jeopardy. We think this was error, and hold, on authority of *Hite v. State,* supra; *Young et al. v. State,* 185 Tenn. 596, 206 S.W.2d 805 (1947); *Brown v. State,* 186 Tenn. 378, 210 S.W.2d 670 (1948); and *Wilson v. State,* 200 Tenn. 309, 292 S.W.2d 188 (1956), that the judgment of the trial court must be affirmed.

Both the Tennessee and the United States Constitutions provide that no person shall be twice put in jeopardy of life or limb for the same offense. Tennessee Constitution, Article 1, sec. 10; U. S. Constitution, Amendment 5. It is well settled that jeopardy attaches when the accused is put upon trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction, and the jury has been impaneled and sworn. *Etter v. State,* 185 Tenn. 218, 205 S.W.2d 1 (1947). See generally, *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

In *Hite v. State,* supra, it is said: "It is a sacred principle of our law that no man shall be placed in jeopardy twice for the same offense. Therefore, where a man has been pronounced not guilty on a valid indictment, he cannot be again indicted upon a charge of having committed the same supposed crime. But, while we guard with great care this rule of defense, so consonant with justice and reason, we must at the same time with equal care see that it is not perverted from its intended purposes and made

to protect from punishment those whom the law never designed should fall within its operation. To entitle a prisoner to the benefit of the plea of autrefois acquit, it is necessary that the crimes charged in the last bill of indictment be precisely the same with that charged in the first, and that the first bill of indictment is good in point of law. The true test by which the question whether such a plea is a sufficient bar may be tried is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal, conviction upon the first''.

This proposition is summarized in 22 C.J.S. Criminal Law sec. 268, in these words: ''No matter how irregular the proceedings have been, one who has been tried in a competent court and acquitted on the merits cannot be placed on trial for the same offense; but the acquittal must have been on the merits; and the rule does not apply where the acquittal was for a material variance.'' The text under this headnote continues: ''The effect of a material variance between the allegations of the indictment and the proof is to entitle the accused to an acquittal on the particular indictment, but he is still liable to be tried for his crime; and, if accused is acquitted by direction of the court on the ground of material variance, he cannot plead acquittal as a bar to a second prosecution for he has never been in jeopardy, and when tried on the new indictment the crime then alleged is not the same crime as in the former indictment.'' (This quotation is not in the replacement volume).

With respect to variance and its materiality we find the following in Wharton's Criminal Law and Procedure, Vol. 5, Ch. 84, sec. 2054:

"In the law of criminal pleading, a variance is a dis-agreement between the allegations in the indictment or information and the proof, as to some matter which is legally essential to the charge. By the early common law, very strict conformity was required between the allegations of the indictment or information and the proof, even in minor and immaterial respects, but the former rule has been greatly relaxed, and the courts no longer regard the consequences of variance with such seriousness as formerly."

Tennessee continues to adhere to the strict common law rule of proof of allegations, as laid down in *Hite v. State*, supra. That rule is, and again we quote:

"It is certainly true that the place of payment (of a note the defendant was charged with stealing) formed no material part of the description of the note, and need not have been stated in the bills of indictment, as has been decided (citing cases). But it is equally true that, having been stated, it became necessary to prove it; otherwise it would not have appeared that the note charged to have been stolen was the same as that described in the bill of indictment. This position is supported by many authorities. *In Roscoe's Criminal Evidence, page 77, it is said that if a person or thing necessary to be mentioned in an indictment is described with circumstances of greater particularity than is requisite, yet those circumstances must be proved;* as, if a man were charged with stealing a black horse the allegation of color, although unnecessary, yet being descriptive of that which is material, could not be rejected.

"In Dorsett's case, 5 Rogers, 77, referred to in Note 1 to Roscoe's Criminal Evidence, 77, it was held that,

where an indictment for coining alleges possession of a die made of iron and steel, proof of one made of zinc and antimony was a fatal variance; *and, in the case of United States v. Porter, 3 Day's Cases, 283, that an allegation in an indictment which is not impertinent or foreign to the cause must be proved, though a prosecution for the same offense might be supported without such allegation,* and that the court will be more strict in requiring proof of the matters alleged in criminal than in civil cases." (Emphasis added)

This has been the rule in Tennessee ever since it was first announced. In *Brown v. State,* supra, 186 Tenn. at page 389, 210 S.W.2d 670, 27 Am.Jur., is approvingly quoted as saying that a variance is immaterial "if the allegation was surplusage". While backhanded, so to speak, this statement is in conformity with *Hite.* In *Wilson v. State,* supra, the question was whether there was a material variance with respect to the first indictment which had charged the theft of brass rollers, when in fact the rollers were of bronze. This Court quoted with approval from *Hite* the portion of the opinion we have quoted above, again indicating our intention of this Court to adhere to the strict rule.

If we are to continue to follow the strict rule, there is no doubt but that there was a material variance in the trial on the first indictment. The "deadly" character of the weapon was in issue under this statutory crime so its description was not surplusage. And the description helped identify with greater particularity the crime in question.

So the question is, whether we shall continue to follow the strict rule; and we think we should.

That this rule is technical, is beyond question. But, it need not be despised on that account. For, it does provide a more exact standard than does the modern rule, and thus there is less chance of error in determining the question of materiality of a variance. Moreover, the rule is eminently logical: in the instant case, for example, it is perfectly possible (however unlikely) that the accused could have committed two distinct robberies of the same parties on the same day, one at rifle and the other at pistol point. It hardly needs pointing out that the strict rule is of no disadvantage to the accused. It affects both sides equally, (as would any other rule, applied, as it must be, consistently as a test both for acquittal for material variance and a plea of former jeopardy). Finally, it cannot be denied that this strict rule actually works to the advantage of the accused in that it puts on the State the burden of proving all of the allegations of the indictment that are not surplusage, thereby removing all reasonable doubt as to the identification of the particular crime.

It remains to be considered whether defendants' federal constitutional rights under the double jeopardy provisions of the Fifth Amendment were violated in view of the recent holding in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), overruling *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and applying federal double jeopardy standards to the states through the Fourteenth Amendment.

Federal cases recognize the effect of a material variance, just as we do. And the test applied by that jurisdiction, as by this, is whether the cases are provable by the same evidence. *United States v. Hunter*, 123 F.Supp. 1 (D.C.Md.1954); *Ex parte Rhinelander*, 11 F.Supp. 298

(D.C.W.D.Tex. 1935); *United States v. Phelan*, 250 F. 927 (D.C.Mass.1917). The only difference is that under our rule the measure of the evidence is more strictly applied. However, our strict rule, being in the first instance to identify more certainly the crime, and requiring strict proof on the part of the State, when consistently applied as a test for both variance and double jeopardy, will affect equally both the state and the defendant, and in our opinion not offend the Fourteenth Amendment.

The judgment of the Court of Criminal Appeals is set aside and the judgment of the trial court is affirmed.

DYER, CHIEF JUSTICE, and CHATTIN and CRESON, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.

OPINION ON PETITION TO REHEAR

MR. JUSTICE HUMPHREYS.

A Petition to Rehear has been filed with the Court, and after due consideration, we are of opinion it should be denied.

The arguments made by the petitioner were either made at the time or were available to him when the case was before the Court. And, on this last point, such new arguments as have been advanced are upon authority this Court considered in arriving at its opinion, except as to the recent case of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which overruled *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), and applied the federal rule of collateral

estoppel, as embodied in the Fifth Amendment guaranty against double jeopardy, to the states.

However, after due consideration of Ashe, the Court is of opinion it has no application to the question whether there has been double jeopardy where the first indictment is void for variance.

The petition to rehear argues the cases *Young et al. v. State*, 185 Tenn. 596, 206 S.W.2d 805 (1947); *Brown v. State*, 186 Tenn. 378, 210 S.W.2d 670 (1948), and *Wilson v. State*, 200 Tenn. 309, 292 S.W.2d 188 (1956), are factually distinguishable from the present case. This is true. However, these cases were cited by the Court simply to show the viability of *Hite v. State*, 17 Tenn. 357 (1836). So the distinguishment of these cases from *Hite* is of no consequence.

While we commend the diligence of defense counsel, and the valor with which his argument is presented, we cannot agree therewith and as indicated, deny the petition to rehear.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and McCANLESS, JUSTICES, concur.