## DUNCAN v. TENNESSEE

No. 70–5122.   Argued January 13, 1972—Decided February 23, 1972

*Rodger N. Bowman* argued the cause and filed a brief for petitioner.

*Everett H. Falk,* Assistant Attorney General of Tennessee, argued the cause for respondent.   With him on the brief was *Robert E. Kendrick,* Deputy Attorney General.

PER CURIAM.

We granted certiorari in this case, 404 U. S. 821, to consider questions seemingly presented under the constitutional guarantee against double jeopardy.   After briefing and oral argument, it now appears that those questions are so interrelated with rules of criminal pleading peculiar to the State of Tennessee, the constitutionality of which is not at issue, as not to warrant the exercise of the certiorari jurisdiction of this Court.   See, *e. g., Wilson* v. *State,* 200 Tenn. 309, 292 S. W. 2d 188 (1956); *Young* v. *State,* 185 Tenn. 596, 206 S. W. 2d 805 (1947).   See U. S. Sup. Ct. Rule 19 (1)(a).   The writ is, therefore, dismissed as having been improvidently granted.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

In dismissing the writ of certiorari in this case, the Court lets stand a conviction secured in violation of petitioner's right, under the Fifth and Fourteenth Amendments, not to be placed in jeopardy twice for a single criminal offense.   The infringement of this

fundamental right is so plain on the record before us that I am compelled to dissent.

Petitioner and a codefendant, Brooks, were brought to trial in the Criminal Court of Montgomery County, Tennessee, on an indictment charging armed robbery "by the use of a deadly weapon, to-wit: A Gun to-wit: a pistol . . . ."[1] The jury was selected and sworn, the indictment read, and a plea of not guilty entered on the defendants' behalf. The State's first witness, the officer investigating the robbery, testified that he had been looking for a "22 rifle" used in the commission of the crime. Defense counsel immediately objected to this evidence as immaterial to a charge of armed robbery with a pistol, and after some discussion out of the jury's presence, his objection was sustained. The prosecutor then informed the court that he had used the word "pistol" in the indictment by mistake and that in view of the court's refusal to admit evidence of the rifle, the State could proceed no further with its case and would move for a directed verdict of acquittal on the ground of erroneous indictment. The trial court granted this motion over defendants' objection and instructed the jury "to find, or to acquit the Defendants of the charge in view of that error in the indictment."

About eight months later, in March 1969, the defendants were again brought to trial for the same armed robbery. The new indictment was identical to the old

---

[1] Tenn. Code Ann. § 39–3901 (Supp. 1970) provides:

"Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. Every person convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five (5) nor more than fifteen (15) years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years."

as to date, victim, and amount of money stolen and differed only in its description of the weapon as a "22 caliber rifle." Nevertheless, defendants' plea of double jeopardy was overruled by the court, and they were convicted and sentenced to 10 years' imprisonment. The State Court of Criminal Appeals sustained defendants' double jeopardy claim on appeal, but the Supreme Court of Tennessee reversed. *State* v. *Brooks,* 224 Tenn. 712, 462 S. W. 2d 491 (1970). It agreed that evidence of the rifle was properly excluded at the first trial, since under Tennessee's "strict" variance rule " 'an allegation in an indictment which is not impertinent or foreign to the cause [such as specifying the weapon as a pistol] must be proved, though a prosecution for the same offense might be supported without such allegation' . . . ." 224 Tenn., at 717, 462 S. W. 2d, at 494 (italics omitted), quoting *Hite* v. *State,* 17 Tenn. 357, 377 (1836) (theft of note payable at *Mechanics'* and Traders' Bank inadmissible on indictment specifying note payable at *Merchants'* and Traders' Bank). See also *Wilson* v. *State,* 200 Tenn. 309, 292 S. W. 2d 188 (1956) (proof of theft of bronze rollers material variance from indictment charging theft of brass rollers). The court went on to hold, however, that since the variance between "pistol" and "rifle" was sufficient to render the initial indictment defective, it was likewise sufficient to distinguish the second indictment from the first for double jeopardy purposes. " 'To entitle a prisoner to the benefit of the plea of autrefois acquit, it is necessary that the crimes charged in the last bill of indictment be precisely the same with that charged in the first, and that the first bill of indictment is good in point of law. The true test by which the question whether such a plea is a sufficient bar may be tried is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal convic-

tion upon the first.' " 224 Tenn., at 715, 462 S. W. 2d, at 493, quoting *Hite* v. *State, supra,* at 375–376. Though recognizing the application of the Double Jeopardy Clause to the States, *Benton* v. *Maryland,* 395 U. S. 784 (1969), the court concluded that the strict variance rule "when consistently applied as a test for both variance and double jeopardy, will affect equally both the state and the defendant, and in our opinion not offend the Fourteenth Amendment." 224 Tenn., at 719, 462 S. W. 2d, at 494. A petition for rehearing based on this Court's decision in *Ashe* v. *Swenson,* 397 U. S. 436 (1970), was denied on the ground that *Ashe* "has no application to the question whether there has been double jeopardy where the first indictment is void for variance." 224 Tenn., at 720, 462 S. W. 2d, at 495.

The guarantee against double jeopardy is " 'fundamental to the American scheme of justice,' " *Benton* v. *Maryland, supra,* at 796, designed to ensure that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S. 184, 187–188 (1957). Thus, we must view with a cautious eye any suggestion, as in the denial of rehearing below, that a particular trial, once commenced, might not result in the attachment of jeopardy under the Constitution. As the State conceded at oral argument, that suggestion is not sustainable here. Had petitioner's first trial gone no further than the impaneling of a jury, this in itself would have served to invoke the constitutional guarantee, for it is now settled that "a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his

consent he cannot be tried again." *Id.*, at 188. There are exceptions to this rule, of course, as in the case of a hung jury, *United States* v. *Perez,* 9 Wheat. 579 (1824), or military emergency requiring withdrawal of charges, *Wade* v. *Hunter,* 336 U. S. 684 (1949), but they do not apply here.

In any event, we need not rely on the calling of a jury to find an attachment of jeopardy, for it is clear that petitioner was not only tried for robbery in the initial proceeding, but was in fact acquitted at the direction of the court. His acquittal, being the final verdict in a court of competent jurisdiction, automatically precluded the State from retrying him for the same offense, even though, as the court below pointed out, the direction to acquit arose from a defect in the indictment. It has long been the rule of this Court that "former jeopardy includes one who has been acquitted by a verdict duly rendered, although no judgment be entered on the verdict, *and it was found upon a defective indictment.* The protection is not . . . against the peril of second punishment, but against being again tried for the same offense." *Kepner* v. *United States,* 195 U. S. 100, 130 (1904) (emphasis added). See also *United States* v. *Ball,* 163 U. S. 662, 669–670 (1896); *Fong Foo* v. *United States,* 369 U. S. 141 (1962) (directed verdict of acquittal, though "egregiously erroneous," bars retrial on the same charge); *Benton* v. *Maryland, supra,* at 796–797. Nor is this rule a mere nicety of abstract constitutional theory. The prosecution might have any number of reasons for wanting to halt a trial at midpoint and begin anew, and the indictment offers a fertile source for the discovery of error. To permit the State to obtain a final verdict by asserting its own mistake in the indictment and then to retry the defendant on the theory that jeopardy had not attached is to subject him to the very dangers that the Double Jeopardy

Clause was designed to avoid. The State very properly conceded at oral argument that petitioner "was placed in jeopardy in the first trial." Tr. of Oral Arg. 23.

The only question, then, is whether the petitioner was tried twice for the same offense. Tennessee argues that under its strict-variance rule the specification of "pistol" in the first indictment charged an entirely different offense from the armed robbery with a "rifle" alleged in the second, since the "same evidence" could not be used to prove both charges. Whatever relevance this doctrine may have in determining a variance between indictment and proof within a single trial, it certainly does not comport with the double jeopardy standards of the Fifth and Fourteenth Amendments. In my view, "the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe* v. *Swenson, supra,* at 453–454 (concurring opinion). This the State has clearly failed to do. At petitioner's first trial the State was prepared to proceed on evidence that a rifle had been used in the robbery. The first witness testified as to a rifle, and the rifle itself was apparently in the courtroom in full view of the jury. Following petitioner's acquittal, the State again tried him for armed robbery with a rifle. The same witness was called to testify about the rifle as in the first trial, and the same rifle was present in the courtroom. In short, though the first indictment charged petitioner with using a "pistol," the State could also have charged him with use of a rifle, based on the very same evidence, both physical and testimonial, on which he was eventually convicted at the second trial. Having failed to do so and having obtained a final verdict at the first trial, the State was barred, in my opinion, from bringing a

second prosecution based on this "single criminal act." [2]

The majority's refusal to address these issues is inexplicable. It may be that the prosecution in this case did not have available to it a ready means, under state law, of amending the first indictment and thus had no choice but to end the trial and begin again. If so, its remedy lies in changing Tennessee's criminal procedure, not in denying petitioner the constitutional protection to which he is entitled. Petitioner was tried twice for the same offense, and his conviction should be reversed. *United States* v. *Jorn,* 400 U. S. 470, 488 (1971) (Black and BRENNAN, JJ., concurring). I would grant him that relief.

---

[2] It is not entirely clear that the two indictments charged different offenses even under state law. In *State ex rel. Anderson* v. *Winsett,* 217 Tenn. 564, 399 S. W. 2d 741 (1965), the Tennessee Supreme Court stated the following with regard to the state robbery statute, *supra,* n. 1:

"When the Legislature determined in 1955 to amend the penalty statute for the crime of robbery, it was obvious that robbery by the use of a deadly weapon was dangerous to life for many reasons, and thus it was that the act was amended to make the penalty for the crime of robbery with a deadly weapon as stated above, to try to prevent the use of a deadly weapon in the perpetration of a robbery. [But] so adding this increased punishment for the increased gravity of the crime does not create a separate or distinct offense, but merely provides for increased punishment of such offender because of the presence of aggravating circumstances." *Id.,* at 567–568, 399 S. W. 2d, at 743.

Relying on *Winsett* and the robbery statute itself, petitioner contends, with some force in my view, that the only crime charged in either prosecution was "robbery," with the use of the weapon and its specification in the indictment adding only to the punishment that might be imposed.