**Chester Wright BURNS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

May 31, 1979.

Certiorari Denied by Supreme Court July 30, 1979.

Walker Gwinn, Public Defender's office, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, Neil Taylor, Asst. Dist. Atty. Gen., Memphis, for appellee.

OPINION

WALKER, Judge.

In this appeal from his conviction for felonious escape with 90 days' imprison-

ment, Chester Wright Burns contends that (1) there is a fatal variance between the indictment and the proof; (2) his conduct does not amount to an escape; and (3) his constitutional rights under the United States Constitution were violated because he was subjected to selective prosecution. We overrule all assignments of error and affirm the conviction.

The indictment charges that ". . . (D)id unlawfully and feloniously, while lawfully confined in the Memphis Community Release Center, *a Division of the State Penitentiary of the State of Tennessee*, the aforesaid Work Release Center located in Memphis, Shelby County, Tennessee, on conviction for the offense of ROBBERY WITH A DEADLY WEAPON, said offense being a Felony, escape therefrom." (emphasis supplied)

■ The evidence showed that the appellant was confined at Memphis Correctional Center, a division of the Department of Corrections, rather than that alleged, which is a separate division of the Department of Corrections.

In *Ray v. State*, 577 S.W.2d 681 (1978), we were presented a similar claim of variance. Ray contended that the state had failed to prove the specific allegation that he was confined in Brushy Mountain Prison, although it was shown that he was incarcerated lawfully under state authority. We held:

"The locus of his incarceration is not a critical inquiry in establishing the crime of escape. As was said in *Chisom [Chisom v. State*, 539 S.W.2d 831 (Tenn.Cr. App.)] the offense is the escape from custody of the confining authority, so that the place of confinement is not, in fact, a relevant inquiry. Both *Johnson v. State*, 148 Tenn. 196, 253 S.W. 963 (1923), and *State v. Brooks*, 224 Tenn. 712, 462 S.W.2d 491 (1970), recognize that for such a variance between the indictment and the proof to be fatal to a conviction the variance must pertain to a material aspect of the offense. If surplusage is with respect to a matter legally essential to the charge in the indictment, then it must be proven in the degree of detail alleged. *Johnson, supra.* The indictment here charged Ray with escaping 'while confined as an inmate in the Brushy Mountain Penitentiary in Morgan County, Tennessee, *under the custody and supervision of the Department of Corrections of the State of Tennessee*, . . . .' (emphasis added). The trial court's minutes show that Ray was committed to the warden of the state penitentiary, and the state penitentiary must be viewed as a system of prisons, rather than one place of incarceration."

Further, the indictment here gave Burns notice of the charge against. him in order that he could prepare his defense and it could not have misled him at the trial. It was also sufficient to prevent a retrial for the same offense. The indictment charged that the appellant was confined by state authorities and that element was proven at trial. For armed robbery he had been sent to the state penitentiary at Nashville, to Fort Pillow State Farm, and then to the Memphis Correctional Center, all parts of the penitentiary system and under the control of the Department of Corrections. We find no fatal variance and this assignment is without merit.

■ Burns had been transferred to the Memphis Correctional Center under a program which permitted selected prisoners to attend Shelby State Technical Institute and earn college credit. Inmates approved for the program are examined by a guard before leaving the center and are required to have a pass and a State Tech student card. They are required to report back to the center 30 minutes after their last class or library period. To reach State Tech, about three-fourths of a mile from the center, they walk down a road and cross an open field and have strict orders not to enter a "free vehicle" at any time. Except when walking directly to and from the institute, they are forbidden to be anywhere other than (1) class, (2) library, or (3) student center.

On March 9, 1978, the appellant left the center at 7:20 a. m. to attend classes with a schedule permitting him to attend classes and visit the library and be back in the center at 3:40 p. m. After attending two classes he signed into the library for study. At about 11:30 a. m. he left the library, called Ms. Bolton, a female ex-guard with whom he had become acquainted. She met him behind the library in her automobile and drove him to her home three to five miles away.

In the meantime officers had missed the appellant in the authorized places and at noon had set up a still watch at Ms. Bolton's home. When she and the appellant came out of the house at about 2:00 p. m. and drove around the corner, the officers arrested both of them.

Burns testified that he had made a number of similar trips with the ex-guard, once to a hotel, and that he had always returned before his pass expired; that on this occasion he was on his way back to attend a class and return to the center.

The appellant insists that he was only "out of place" for which some administrative sanction could be imposed, but that this conduct does not amount to an escape.

In *Chisom v. State*, 539 S.W.2d 831 (Tenn. Cr.App.1976), we said:

> "An escape has been described as a departure from lawful custody. In 30A C.J.S. Escape § 2, at 876, we find the following language:
>
> > " 'The crime of escape has been defined as the voluntary departure of a person without force from the lawful custody of an officer or from any place where he is lawfully confined, as the unlawful departure of a prisoner from the limits of his custody or his acts in regaining his liberty before released in due course of law. A prisoner who gains his liberty from lawful custody before he is delivered therefrom by due process of law commits the crime of escape.'
>
> "In 3 Wharton's Criminal Law and Procedure, sec. 1367, at 758 (1957), it is stated:

> > " '. . . An actual escape, that is, an escape in common meaning, takes place when a prisoner gets out of prison or any place in which he may be confined, or from and out of the authority in whose custody he is, and unlawfully regains his liberty, free from the authority and control of the power entitled to restrain him . . .'

> "Black's Law Dictionary 639–40 (4th ed. 1957), defines the word 'Escape' as:
>
> > " 'The departure or deliverance out of custody of a person who was lawfully imprisoned, before he is entitled to his liberty by the process of law.' "

The training program merely extended the limits of the appellant's confinement to the State Tech campus and, although unguarded, he remained in the constructive custody of the center. *Lacey v. State*, 506 S.W.2d 809 (1974); *Laird v. State*, 565 S.W.2d 38 (Tenn.Cr.App.1978).

When the appellant departed from lawful custody, he committed an escape, punishable under TCA 39–3802, regardless of his intent to return. His willful abscondment from restraint and custody constitutes an escape. The jury had ample evidence to find him guilty of escape.

■ Nor do we find merit in the contention that the appellant was selectively prosecuted. The warden considered this an aggravated case, more serious than that of those receiving lesser punishment. The appellant suggests that the prosecution perhaps was instigated because of his relationship with a female ex-guard from the Correctional Center. If true, this would not amount to a constitutional claim of selective prosecution because the state may legitimately act to discourage such relationships between prisoners and prison guards. The trial judge properly found no violation of his constitutional rights.

Affirmed.

DWYER and DAUGHTREY, JJ., concur.