GAIDRY, J.
[^Defendant, Ron Daniel Underdonk, was charged by bill of information with one count of attempted aggravated rape (Count 1), in violation of La. R.S. 14:27 and 14:42, and one count of aggravated kidnapping (Count 2), in violation of La. R.S. 14:44. At his arraignment, defendant pled not guilty. After a trial by jury, defendant was found guilty as charged on Count 1, and he was found guilty of the responsive offense of second degree kidnapping, a violation of La. R.S. 14:44.1, on Count 2. On Count 1, defendant was sentenced to imprisonment for ten years at hard labor, without benefit of parole, probation, or suspension of sentence. On Count 2, defendant was sentenced to imprisonment for five years at hard labor, with the first two years to be imposed without benefit of parole, probation or suspension of sentence. Defendant was subsequently adjudicated a third-felony habitual offender. Thereafter, the trial court vacated defendant’s original sentences on both counts, and defendant was sentenced to 33.33 years at hard labor, without benefit of parole, probation, or suspension of sentence on Count 1, and to. 26.67 years at hard labor, without benefit of probation or suspension of sentence on Count 2. The trial court ordered defendant’s sentences to run concurrently with each other. Defense counsel orally moved for reconsideration of both sentences, but that motion was denied by the trial court. Defendant now appeals, alleging three assignments of error. For the following reasons, we vacate defendant’s conviction, habitual offender adjudication, and sentence on Count 2, and we affirm defendant’s conviction, habitual offender adjudication, and sentence on Count 1.
*372 1 ¡¡FACTS
At trial, the victim, O.N.[1], testified that around 7:00 a.m. on May 8, 2007, she was working at the S & T Food Mart on Grand Caillou Road in Houma when defendant entered to purchase a bottle of water. O.N. recognized defendant as a regular customer who normally pulled up to the store in a silver Ford Expedition with loud music emitting from his vehicle. O.N. asked defendant why he had come into the store so early, and defendant responded that he had been up all night because he had gone to Morgan City to get a tattoo. Defendant left the store after buying his bottle of water.
Approximately ten minutes later, defendant reentered the store and asked O.N. whether she wanted to see his tattoo, indicating that it was by his penis. O.N. said that she did not want to see defendant’s tattoo, but defendant then stated that he was just joking about his tattoo being by his penis, and defendant asked O.N. to come around the counter to see his actual tattoo. As O.N. rounded the counter, defendant punched her in her head, and O.N. fell to the ground. Defendant dragged O.N. a short distance to a room in the back of the store and attempted to close the door, but was unsuccessful due to several boxes blocking the way. O.N. struggled to free herself from defendant and repeatedly asked him to stop, but O.N. testified that defendant kept punching her. As O.N. continued to struggle with defendant, defendant opened an exterior door leading to the rear of the store, and he dragged O.N. outside. Defendant dragged O.N. behind the S & T Food Mart and through an unlocked fence that bordered an abandoned Delchamps supermarket. Upon reaching the back of the Delchamps, defendant held O.N. in a bear hug with her arms immobilized and with O.N.’s back facing defendant’s l4front. According to O.N., defendant then began trying to undress her by grasping at the button and zipper of her jeans. Defendant also placed his hands over O.N.’s jeans and touched her private area. Eventually, defendant released O.N. from his grasp and told her that she could leave. According to O.N. defendant never succeeded in undressing her or placing any part of his body in her pants, but he did unbutton her pants. After she was released, O.N. witnessed defendant begin to walk to his car, which he had parked in an alley behind the Del-champs, and she ran around to the front of her store to ask for help. O.N. reentered the S & T Food Mart through its front door to retrieve her cell phone, which she then used to call 911. Surveillance video from the S & T Mart indicates that this entire incident took place in the span of about one minute and forty seconds.
Immediately after the incident, Officer Kyle Faulk of the Houma Police Department retrieved a surveillance video from a nearby business during the course of his investigation. He observed defendant’s vehicle on the surveillance video and relayed the pertinent information to his squad commander.
Officer Stephen Kazusky was employed as a detective for the Houma Police Department at the time of the incident.[2] Officer Kazusky received the information relating to defendant’s vehicle and assisted in locating the vehicle, which was parked behind a shed outside of defendant’s grandmother’s house.[3] Officer Kazusky *373 made contact with defendant inside the house, and defendant stated that he knew that the police were there because he had “struck the female at the store.” Defendant was taken into custody and brought to the police station, where he made a second | ¡^statement. In this statement, defendant indicated that he had taken cocaine the night before and that he remembered going to the S & T Food Mart and striking O.N. However, defendant stated that he blacked out after he struck O.N., and he only recalled running back to his vehicle and subsequently leaving the scene. Defendant said that he did not remember what happened between first hitting O.N. and running away toward his vehicle. Officer Kazusky left the interrogation room to prepare the probable cause affidavit for defendant’s arrest warrant, and when he returned to handcuff defendant, defendant said that he was starting to remember more details of the incident. Defendant stated that in addition to taking cocaine the night before, he had also been drinking beer and daiquiris. Defendant also said that he remembered struggling with O.N. in the “back parking lot” and running to his car. Officer Kazusky asked defendant what he was going to do with O.N. when he got her outside, and defendant responded, “I can only speculate that 1 was going to rape her, but I still don’t recall the details of what I was going to do.”
Defendant testified on his own behalf at trial. He stated that he had been awake doing cocaine and drinking alcohol all through the night before the incident. He admitted to striking O.N. but said that he did not remember anything until he unlocked the back door of the store and ran away. Defendant stated that, to his knowledge, nothing happened between him and O.N. outside the store. Defendant stated that he never had any sexual intent, that he did not know why he speculated about rape to Officer Kazusky, and that he did not intend or try to rape O.N. Defendant also testified that he was not attempting to argue to the jury that he was not guilty by reason of insanity or not guilty by reason of intoxication. On cross-examination, defendant testified that he parked his vehicle in front of the store on his first 16visit to the S & T Food Mart and that he parked it in the back of the store on his second visit. Defendant explained that he parked his vehicle in the back of the store during his second visit in order to hide from his wife, who he thought might be exiting their subdivision to bring their kids to school. Defendant also reiterated that he blacked out after hitting O.N. only one time. After hearing all the testimony presented at trial, the jury found defendant guilty of attempted aggravated rape and guilty of the responsive offense of second degree kidnapping.

REVIEW FOR ERROR

This Court reviews the record for error under La.Code Crim. P. art. 920(2). Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. See State v. Price, 2005-2514 (La.App. 1st Cir.12/28/06), 952 So.2d 112, 128 (en banc), writ denied, 2007-0130 (La.2/22/08), 976 So.2d 1277. We note such an error which requires us to vacate defendant’s conviction, habitual offender adjudication, and sentence for second degree kidnapping.
Defendant was charged by bill of information with attempted aggravated rape and aggravated kidnapping. Article I, section 15 of the Louisiana Constitution *374 provides that no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury. Likewise, La. Code Crim. P. art. 382(A) provides that prosecution for an offense punishable by death, or for an. offense punishable by life imprisonment, shall be instituted by grand jury indictment. Aggravated kidnapping is punishable by life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:44. Therefore, the institution of prosecution for this offense |7should have been by grand jury indictment. The failure to proceed by grand jury indictment on defendant’s aggravated kidnapping charge is a fatal defect. See State v. Donahue, 355 So.2d 247 (La.1978). This defect may not be cured by a responsive verdict of a lesser included offense which could have been charged by a bill of information. See State v. Ruple, 437 So.2d 873, 875 (La.App. 2d Cir.1983).
We must now determine whether our invalidation of defendant’s second degree kidnapping conviction due to a fatal defect in the bill of information requires us to invalidate defendant’s conviction for attempted aggravated rape. See Donahue, 355 So.2d at 249.
Attempted aggravated rape is neither a capital crime nor a crime punishable by life imprisonment. See La. R.S. 14:27(D)(1)(a) & La. R.S. 14:42(D)(1). Therefore, it may be charged by grand jury indictment or by bill of information. See Donahue, 355 So.2d at 249. It is clear, therefore, that had the attempted aggravated rape charge been brought alone, it could have properly been brought by bill of information. Moreover, if the aggravated kidnapping charge had been quashed or severed before trial began, the prosecution for attempted aggravated rape could have continued separately. See Donahue, 355 So.2d at 249. This is so because each count in a multiple-count bill of information independently charges an offense. See Donahue, 355 So.2d at 249. Thus, if one count of a two-count indictment or information is invalid, only the defective count will be quashed or nullified. See Donahue, 355 So.2d at 250.
The only real question, then, is whether the charge and evidence of the aggravated kidnapping charge, presented to the jury simultaneously with that from the attempted aggravated rape charge, so infected the otherwise properly charged and tried attempted aggravated rape prosecution as to | ^require reversal of the attempted aggravated rape conviction. See Donahue, 355 So.2d at 250. We believe that it did not.
Here, the two crimes arose out of the same transaction, and facts as to each offense would have been admissible at trial of the other offense as part of the res gestae. See Donahue, 355 So.2d at 250. Thus, the instant situation is not one where the counts could not have been joined and where such misjoinder resulted in inherent prejudice to defendant on each charge. See Donahue, 355 So.2d at 250; La.Code Crim. P. art. 493.
In this case, the State used evidence of defendant’s attempted aggravated rape to try to support a conviction for aggravated kidnapping by arguing that defendant had attempted to secure something of value from O.N. (ie., sexual gratification) to secure her release. However, the state’s introduction of evidence related to the forcible seizing and carrying element of the aggravated kidnapping charge was equally relevant to the force element of attempted aggravated rape. Therefore, the state’s introduction of evidence related to the aggravated kidnapping charge did not taint defendant’s trial on his attempted aggravated rape charge because the same evidence was relevant for both offenses.
*375 We hold that the defective bill of information nullifies only defendant’s conviction for second degree kidnapping and his subsequent habitual offender adjudication and sentence related to this conviction. Therefore, we must now address defendant’s assignments of error as they relate to his conviction for attempted aggravated rape.
ASSIGNMENT OF ERROR # 1
In defendant’s first assignment of error, he argues that the evidence presented at trial was insufficient to support his conviction for attempted 1 flaggravated rape. Specifically, defendant contends that the state failed to prove that he had the specific intent to commit aggravated rape.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statutes 14:42 provides in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances: (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
Louisiana Revised Statutes 14:41 provides in pertinent part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
Louisiana Revised Statutes 14:27(A), in turn, provides:
|inA. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 Specific intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. The trier of fact is to determine the requisite intent in a criminal case. State v. Crawford, 619 So.2d 828, 831 (La.App. 1st Cir.), writ denied, 625 So.2d 1032 (La.1993).
*376 Viewing the evidence in the light most favorable to the prosecution, we find that the state established that defendant did have the specific intent to commit an aggravated rape of O.N. The victim testified at trial that defendant hit her, forced her into an alley behind her store, and attempted to undress her while simultaneously touching her private area. Further, defendant succeeded in unbuttoning O.N.’s jeans. Additionally, the recording of O.N.’s call to 911 reveals that it was her perception of defendant’s actions that he was attempting to rape her during the struggle. Lastly, when he was asked by Officer Kazusky what he planned to do with the victim once she was outside, defendant replied that he could only speculate that he was going to rape her. These facts and circumstances, taken together, establish that defendant had the requisite intent to support his conviction for attempted aggravated rape.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting |, ¶ testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
In his own testimony, defendant stated that he blacked out after he hit O.N. the first time and that he regained awareness when he unlatched the back door of the store and began to run away from the scene. Defendant further stated that he did not remember anything happening between him and O.N. outside of the store. The jury apparently rejected defendant’s version of the events and his contention that he had no sexual intent toward O.N. In reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See Ordodi, 946 So.2d at 662. Furthermore, a reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. \KState v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). We further note that, despite the admission of his intoxication at the time of the offense, defendant never raised the defense of intoxication as an attempt to negate the specific intent element of attempted aggravated rape, and he specifically disclaimed this defense in his own testimony.
After a thorough review of the record, we are convinced that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, defendant was guilty of attempted aggravated rape.
*377 This assignment of error is without merit.

ASSIGNMENT OF ERROR #2

In his second assignment of error, defendant contends that his habitual offender sentence is excessive and that it was unconstitutionally imposed. Specifically, defendant claims that his habitual offender sentence is disproportionate and that it serves no meaningful sentencing goals. Secondly, defendant contends that he was improperly adjudicated a habitual offender because the state did not present evidence of constitutionally sound guilty pleas for his predicate convictions. Defendant argues that he was not advised of the sentencing range for one of his offenses and that he was advised in each of his predicate pleas that by pleading guilty, he was waiving his right to court-appointed counsel. We will address defendant’s second contention first.

Habitual Offender Adjudication

If the defendant denies the allegations of the habitual offender bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when the |13pleas were taken. See State v. Shelton, 621 So.2d 769, 779 (La.1993). If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Shelton, 621 So.2d at 779. If the defendant is able to do this, then the burden shifts to the state. The state will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one that reflects a colloquy between the judge and the defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers.[4] Shelton, 621 So.2d at 779-80. If the state introduces anything less than a perfect transcript, for example, a guilty plea form, a minute entry, an imperfect transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and the state to determine whether the state has met its burden of proving that the defendant’s pri- or guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights. Shelton, 621 So.2d at 780.
The purpose of the rule of Shelton is to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume a valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, 2004-1401 (La.7/2/04), 879 So.2d 689, 691 (per curiam). The state is not required to use a specific type of evidence in order to carry its burden of proof pursuant to the Habitual Offender Law, La. R.S. 15:529.1. State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339, 344-45 n. 3, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). Rather, any competent evidence may be used to prove a defendant’s prior convictions. Accordingly, the state’s burden of proof may be met by various means including the testi *378 mony of witnesses to prior crimes, expert testimony matching fingerprints of the defendant with those in the record of prior convictions, or photographs contained in a duly authenticated record. State v. Mays, 2005-2555 (La.5/26/06), 929 So.2d 1231, 1232 (per curiam).
Herein, the state presented evidence in support of the following predicate convictions in Terrebonne Parish: a November 16, 1998 guilty plea to attempted possession of cocaine (a violation of La. R.S. 40:967(C) & La. R.S. 40:979) in case number 317574; a June 16, 2003 guilty plea to simple burglary (a violation of La. R.S. 14:62) in case number 406746; and a June 16, 2003 guilty plea to simple burglary (a violation of La. R.S. 14:62) in case number 407990. At the hearing, the State presented expert testimony matching the fingerprints of defendant with those in the record of his prior convictions. The state also introduced into the record the transcript of each of defendant’s Boykin colloquies for his predicate offenses. Defense counsel argued at the habitual offender hearing that defendant’s guilty pleas were invalid because he was not advised that they may be used against him in future habitual offender proceedings and because defendant was advised that by pleading guilty, he was waiving his right to court-appointed counsel. On appeal, defendant adds the contention that he was not informed of the actual sentencing range for his predicate conviction for attempted possession of cocaine.
We first note that although advice with respect to a defendant’s sentencing exposure and the possibility of enhancement may facilitate the |, staking of a voluntary guilty plea, such advice has never formed part of the Supreme Court’s core Boykin requirements for the entry of a presumptively valid guilty plea. See State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158, 1164. Therefore, these contentions are not fatal to defendant’s predicate guilty pleas.
Defendant’s second argument is that when the trial court advised him in each of his predicate guilty pleas that he was waiving his right to court-appointed counsel, this advice misled defendant into believing that he was not entitled to counsel in future proceedings in those cases, such as potential appeals. In denying this argument, the trial court noted that it had reviewed the transcripts of defendant’s Boykin colloquies and found them to be substantially the same as those used in his own and other jurisdictions. (R. p. 625). Furthermore, defendant introduced no affirmative evidence to support his assertion of being misled on the issue of court-appointed counsel. We find no error in the trial court’s finding that the evidence presented at defendant’s habitual offender hearing was sufficient to adjudicate him a third-felony habitual offender.[5]

Excessive Sentence

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may fell within statutory limits, it may nevertheless violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered constitutionally excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain |ifiand suffering. State v. Dorthey, 623 So.2d 1276, *379 1280 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Landos, 419 So.2d 475, 478 (La.1982). See also State v. Savario, 97-2614 (La.App. 1st Cir.11/6/98), 721 So.2d 1084, 1089, writ denied, 98-3082 (La.4/1/99), 741 So.2d 1280.
Here, defendant was convicted of attempted aggravated rape, a crime which carries a potential penalty of not less than ten nor more than fifty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:27(D)(l)(a) & La. R.S. 14:42(D)(1). After his adjudication as a third-felony habitual offender, defendant’s sentencing range was a minimum two-thirds of the longest possible sentence for his attempted aggravated rape conviction and a maximum of not more than twice the longest possible sentence. See La. R.S. 15:529.1(A)(l)(b)(i) (prior to 2010 amendments). So, when the trial court sentenced defendant to 33.33 years at hard labor, without benefit of parole, probation, or suspension of sentence as a third-felony habitual offender, defendant was given the shortest possible sentence for which he was eligible. Given the facts of this case and considering that defendant’s enhanced sentence is the minimum possible under the Habitual Offender Law, we find no abuse of the trial court’s discretion.
This assignment of error is without merit.
I ^ASSIGNMENT OF ERROR # 3
In his final assignment of error, defendant argues that each of his verdicts should be set aside because of confusion regarding the jury tally for his second degree kidnapping conviction.
Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. See La. Const, art. I, § 17(A); La.Code Crim. P. art. 782(A). The record reflects that, during polling, one juror mistakenly answered both “yes” and “no” on the card asking whether her verdict was guilty of second degree kidnapping on Count 2. Two other jurors had marked “no.” The multiple-answer juror was then re-polled, and she indicated “yes” on a new card asking whether her verdict was guilty of second degree kidnapping on Count 2. After carefully reviewing the record, we have determined that there was no confusion about the sufficiency of the jury tally on Count 1, and we have already determined that defendant’s conviction on Count 2 should be vacated for the reasons stated above.
This assignment of error is without merit.
For the foregoing reasons, defendant’s conviction, habitual offender adjudication, and sentence on Count 1 are affirmed. Defendant’s conviction, habitual offender adjudication, and sentence on Count 2 are vacated. We remand for further proceedings.[6]
*380 COUNT 1 CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED; COUNT 2 CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE VACATED AND REMANDED.[7]

. In accordance with La. R.S. 46:1844(W), the victim herein is referenced only by her initials, or referred to as "the victim.”

. Officer Kazusky now works for the Louisiana State University Police Department.

.Officer Kazusky indicates in his testimony that the vehicle was located outside of defendant's uncle's house, but defendant's own testimony indicates that the house belonged to his grandmother. There is no dispute that the *373 house where the vehicle was found is located on Cleveland Street in Houma, so we will refer to the location as defendant’s grandmother’s house.

. In Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that because a guilty plea constitutes a waiver of constitutional rights, including the privilege against self-incrimination, the right to trial by jury and the right to confront one’s accusers, the prosecution is required to show that the plea was intelligent and voluntary.

. Because two of defendant's convictions were obtained on the same day (June 16, 2003) before October 19, 2004, those convictions are counted as one conviction for the purposes of the Habitual Offender Law. See La. R.S. 15:529.1(B).

. Due to the nullity of the State’s aggravated kidnapping bill of information, jeopardy has not yet attached as per La.C.Cr.P. Art. 596(3). See Illinois v. Somerville, 410 U.S. 458, 459, 93 S.Ct. 1066, 1068, 35 L.Ed.2d 425 (1973), Duncan v. Tennessee, 404 U.S. 821, 92 S.Ct. 121, 30 L.Ed.2d 49 (1971), cert. dismissed 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972), State v. Williams, 301 So.2d 587, 588 (La.1974). The State may retry the defendant for *380 aggravated kidnapping provided an indictment is returned from a grand jury.

. Original sentence for second degree kidnapping was incorrect, as the court did not impose at least two years without the benefit of probation, parole, or suspension of sentence. La.R.S. 14:44.1(C). This issue is moot, however, since Count 2 will be remanded for other reasons.