LAWRENCE STEADMAN *v.* STATE OF TENNESSEE.

*(Nashville,* December Term, 1954.)

Petiiton to rehear filed August 2, 1955.

Rehearing denied October 7, 1955.

HENRY & HENRY and WADE & FORRESTER, all of Pulaski, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Steadman was indicted, tried and convicted for the homicide of one Porter Smith. His conviction was for voluntary manslaughter with the maximum punishment fixed at no more than two years and a day in the State

Prison from which this appeal comes. He has seasonably assigned 13 errors, all of which will be considered, first or last, in this opinion though they will not be considered seriatim. At the hearing we heard exceptionally able arguments on the facts and on the assignment of error in relation to the separation of the jury. One of counsel for the plaintiff in error made the frank statement in the oral argument that if this assignment, that is, the assignment on the separation of the jury, was not good then he doubted whether there was any reversible error in the record. We though have and are considering each assignment of error along with the whole record regardless of this very frank statement.

Much emphasis is placed upon the assignment of error in relation to the separation of the jury—the brief from pages 6 through page 18 is taken up with this assignment in mind. In this consideration counsel have briefed and ably argue every case that we know of in the books relating to this question of separation of the jury here presented. We have carefully read each of these cases. Before consideration of the cases applicable it is necessary for a brief statement of the factual situation concerning separation of the jury.

It is, briefly, shown that in Pulaski, the County Seat of Giles County where this case was tried, that the Sheriff's facilities in taking care of a jury and feeding them were very limited. It was necessary for him to give them breakfast in one restaurant and take them to lunch and dinner at two other restaurants. The reason for this was that at breakfast there were very few people there and they could all be taken care of while at the noon and night meal there was quite a crowd in the town so that it made it very hard to feed the jury and keep them separated so that they could not be communicated with by

outsiders. We think that on this question as to whether or not they were communicated with by outsiders at these various meals it is shown in the record that there was no improper communication thus with any of the jurors by outsiders having contact with them. They were at all times attended by an officer or officers. It clearly appears from this proof that there was no prejudice to the rights of this defendant by contact with outsiders at these meals. *Cole* v. *State,* 187 Tenn. 459, 465, 215 S. W. (2d) 824.

"The presumption of right acting attends the jury so long as it is guilty of no misconduct." *King* v. *State,* 91 Tenn. 617, 629, 20 S. W. 169, 171.

The serious question, so ably argued by the plaintiff in error, is the fact of the separation between the male jurors and the one woman juror. On Sunday afternoon during the progress of the trial the male jurors by consent went to the home of one of the jurors, accompanied by the officer who was in charge of them, and witnessed a television show. It is shown that these male jurors did not come in contact with anyone though and it is also shown that there could have been no prejudice to the plaintiff in error by reason of this fact. It seems that some one of counsel representing the plaintiff in error consented to the jury going to the home of this juror and watching the television show. It is not shown though that anyone knew at that time that the woman juror, who was accompanied by a woman officer, did not accompany the male jurors to the home of this juror to view this television show. The plaintiff in error or the defendant as he was below, could not in a case of this kind agree to the separation of the jury. *Long* v. *State,* 132 Tenn. 649, 179 S. W. 315. And when the agreement was made by counsel to go to the juror's home and see the television they did not know or consent at that time that there would be a

separation of the jury—the male members going one place, and the female member with the female officer accompanying her, going another. This separation of the males and the female as it happened here is the question that is so ably argued here as error and the one which has given us much concern.

■ All cases touching the question of the separation of the jury up to the time of *Sherman* v. *State,* 125 Tenn. 19, 140 S. W. 209, are ably reviewed in that opinion by then Associate Justice Green who afterwards became our very able Chief Justice, until his death about 8 years ago. In reviewing these cases it is perfectly evident that in the course of years the courts have somewhat departed from the exceptionally harsh and extreme rule of keeping a jury in contact as was carried out in the very early years of the law, as is pointed out by this Court in *Etter* v. *State,* 185 Tenn. 218, 205 S. W. (2d) 1. We though have never departed from the rules, in reference to the separation of the jury in criminal cases, as is laid down in *Hines* v. *State,* 27 Tenn. 597, 601, wherein this Court held the true principles to be:

"First, that the fact of separation having been established by the prisoner, the possibility that the juror has been tampered with, and has received other impressions than those derived from the testimony in court exists, and prima facie the verdict is vicious; but second, this separation may be explained by the prosecution, showing that the juror had no communication with other persons, or that such communication was upon subjects foreign to the trial, and that, in fact, no impressions, other than those drawn from the testimony, were made upon his mind. But third, in the absence of such explanation, the

mere fact of separation is sufficient ground for a new trial.''

First it will be remembered that these rules and principles governing separation of a jury in criminal cases is not statutory but is derived from the common law. *Long* v. *State,* supra. The fact of this separation was shown on a motion for new trial by the testimony of the male officer in charge of the male jurors. There is no showing in this record that the female juror or the female officer with her communicated with anyone outside, or that anyone attempted to do so. The State does not offer any evidence that there was no attempt to communicate with this juror during this separation. Under the strict application of the rules governing a separation of the jury above quoted there would probably be technical error here committed because under those rules since there was this separation it would prima facie appear that someone had had an opportunity and thus without explanation the verdict would be wrong.

The State takes the position that since there is a showing that each of these groups of jurors was under the care of an officer who had taken an oath to keep the jury separate and apart from other citizens and to suffer none of them to communicate with others nor communicate with them, him or herself, that then this presumption as established by the rule above quoted from the Hines case is overcome because it is presumed that the officer has done his duty and to have kept such separation from outside sources rigidly enforced. It seems to us that here where we might have one presumption against the other that the presumption that the officer has done his duty and kept outside communications away from the jury should be pre-eminent and in the absence of any evidence to the contrary this presumption must obtain and assign-

ments based on the separation of the jury as above outlined are not well taken.

By certain statements of this Court in *Kennon* v. *State,* 181 Tenn. 415, 181 S. W. (2d) 364, and in *Cole* v. *State,* supra, it might be argued on behalf of the State that we have abandoned or done away with those rules adopted with reference to the separation of a jury in a criminal case above quoted from the Hines case. When we examine these authorities though, that is, *Kennon* v. *State,* and *Cole* v. *State,* and the authorities relied upon there as authority for these statements, it is found that in each instance the court has complied with the rules above quoted and we have not abandoned them. As we have said this Court in *Sherman* v. *State,* supra, reviewed all cases on the question up until that time. Since then the Court has decided the case of *Long* v. *State,* supra, where there was a total separation of the jury and was wholly unexplained. This was held error. Then there is the case of *Hickerson* v. *State,* 141 Tenn. 502, 213 S. W. 917, 918, wherein the lower court was reversed on account of the separation of a jury but in this case the case was not determined on its merits. The consideration on the merits was foreclosed because the bill of exceptions was not filed in time. The Court then had before it the motion for new trial, certain evidence in reference to one of the jurors going to the home, the sickness and death of a child and communicating with his wife and others outside the presence of the officer. This Court there again speaking through the then Mr. Justice Green held that this separation was reversible error. It was reversible error because the verdict was prima facie vicious under the authorities as reviewed in *Sherman* v. *State,* supra. This Court though in the Hickerson case said:

"Nor. do we think chapter 32. of the Acts of 1911 [Harmless Error Statute, Code 10654] can be applied here. The act of 1911 is to be invoked only where this court can look to the merits of the controversy. Where the whole case is before us and we can see that the merits have been reached, there will be no reversal for errors not affecting the merits."

Thus it will be seen that even though there might be error in a separation of the jury it is our duty to examine the merits of the case and see whether or not the case is affected by this separation. See many cases in the footnote to the Code Section 10654 on this subject. The result is then that we must examine the merits of this case. The writer of this opinion has spent six days very carefully reading this large record of something over 1,100 pages. After thus carefully reading and studying the factual situation as presented by this record we are clearly of the opinion that the evidence does not preponderate against the verdict and that that evidence as accepted by the jury was clearly the most credible and logical evidence of the happenings in this homicide.

An opinion dealing with the fact and other assignments of error has been filed but is not made a part of this because unnecessary for publication.

### On Petition to Rehear

The plaintiff in error has filed a very forceful, sincere, dignified and urgent petition to rehear in this case. The petition is addressed solely to the portion of our opinion dealing with the separation of the jury. The petition cites no new authority and is merely a reargument of the matters so ably argued at the bar and in the briefs originally filed. The petition though screams with sincerity and conviction of the right of the pleader. We admire such a

conviction in an advocate, and even though we cannot agree, it is an admirable quality. We in conference discussed this question at length and after much study and thorough deliberation arrived at the conclusion we did as attempted to be set forth in the original opinion. We have now, due to the sincerity of this petition, reconsidered the matter and are more convinced than ever of the correctness of our original opinion. Of course we are sorry that we cannot always reach the same conclusion that the advocate does but this is a matter of impossibility and we feel that when the question now before us is considered in an impartial light (one that no good advocate has) that the conclusion that we have reached is the only right, logical and fair conclusion based on previous holdings of this Court as well as on logic and justice.

An examination of all of our jury separation cases, which were considered in our original opinion, from a common-sense viewpoint it will be seen that these cases are all bottomed on the proposition, that is, the separation of the jury into one or more groups vitiates the verdict because the jury is thereby given an opportunity for contact with outsiders and the possibility of being tampered with. This is the reason back of the rule of why jury separation vitiates a verdict. Because when thus separated they can be more easily tampered with. As was said in one of our first cases, *McLain* v. *State,* 18 Tenn. 241 * * * "and mingle with the balance of the community." In other words by the separation the jury was given an easier opportunity of getting something about the case which was not presented in the evidence.

In *Cartwright* v. *State,* 80 Tenn. 620, at page 625, the Court again expresses the reason thus:

"It is the opportunity of tampering with a juror,

afforded by the separation which constitutes the ground for a new trial, but if such separation afforded no such opportunity, there can be no cause for a new trial: [Stone v. State] 4 Hum [ph.] [27] 37''

Under the record in the case now before us the jury, male and female, though separated as shown in the original opinion were never out of the presence of the officers who were sworn to guard them. Clearly the oath taken by such officers required the respective officers to keep the jury separate and apart from other citizens, to suffer no one to communicate with them nor to communicate with them, him or herself, about the case. *Clark* v. *State,* 67 Tenn. 591. It seems to us that under such circumstance where a proper oath had been administered and there is nothing to the contrary that these presumptions of the officer doing his or her duty prevails.

It is argued that the woman officer in charge of the woman juror should have been called by the State and subject to examination to show that she had not communicated with this juror or allowed this juror to communicate with others. '''Because of her close association with a special prosecutor for the State.'' We did not overlook this proposition by any means in our original consideration of the case. We felt that the trial judge who administered the oath to this officer considered this officer above such reproach. The counsel for the plaintiff in error made no question about this lady acting as an officer in charge of this juror at the time and every reason is that when the person would take this oath of office as she did there from the trial judge then in the absence of some definite showing to the contrary the clear presumption is that she did her duty.

We are satisfied that we correctly analyzed *Hickerson* v. *State,* 141 Tenn. 502, 213 S. W. 917. Of course the

Court did not hold in that case that the harmless error statute applied but this comment that we quoted was merely to the fact that the State had relied upon that and the Court would not apply it because it did not have the record before it. In other words this reasoning is to the effect that if the record was before it then the Court could consider the application of the harmless error statute.

We cannot conceive that the error here complained of is "a basic constitutional right" of the plaintiff in error. The argument made on this is that just any separation of a jury would vitiate the verdict regardless of what happens. We do not so understand the authorities because they are as we heretofore said in this opinion based on the fact that through separation the jury may be tampered with or get other evidence that is not presented in a regular manner. Obviously this is picking out certain words and language and stretching the reasoning of those cases to a point that was never anticipated or considered. We can think of many, many instances of where jurors might be separated in the presence of an officer and not have an opportunity to be tampered with by others and of course it has never been noticed, no question is asked about it at all because over the years it has been conceded that under such situations there was no error—the accused was getting his every constitutional right and justice was being done. The Legislature evidently contemplated that this very question would arise when they passed Chapter 71 of the Public Acts of 1951. This Act has just been brought to our attention. It fully answers the question here made. It is a fair, correct and constitutional act. This Act provides:

"Be it further enacted, That in all cases where a

woman or women be sworn as a member or members of the jury in felony cases, it shall not be unlawful or render the verdict void for the women members of said jury to be segregated from the male members thereof when outside the courtroom where the case is being tried, on condition that each member of the jury remains in the custody of an officer or officers, duly sworn for that purpose.''

After much study and a very thorough consideration we are convinced that our original opinion was correct. For the reasons therein and here stated we must overrule the petition to rehear.