**Angel Felix GONZALES and Princess Marie Gonzales, Petitioners,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Jan. 21, 1980.

Mark Rassas, Rassas & Rassas, Thomas K. Carter, Marks, Fleming & Marks, Clarksville, for petitioners.

William M. Leech, Jr., Atty. Gen., Henry E. Hildebrand, III, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Justice.

Angel Gonzales was convicted on two counts of assault under T.C.A. § 39–601 for the abuse of his daughter Mima and his stepdaughter Maheeta. Princess Gonzales was convicted for a violation of T.C.A. § 39–601(b)(4), failing to take action to protect Mima from abuse. Angel Gonzales received two consecutive four to ten year sentences. Princess Gonzales also received a four to ten year sentence. The Court of Criminal Appeals affirmed.

In granting the writ of certiorari, we were concerned only with the issue of whether the total separation of the jury, at the end of the second day of trial, required a new trial, as insisted by both defendants.

### I.

The trial began on March 6, 1978, and the jury was sequestered that night. March 7, 1978, was election day to adopt or reject the thirteen proposals of the constitutional convention of 1977. At 4:00 p. m., on March 7, both sides had rested and the trial judge, out of the presence of the jury, informed counsel that seven jurors wanted to vote and it was obvious that the trial could not be completed before the polls closed; that he proposed to allow the jury to go home after giving them a strong admonition not to read any newspaper stories or listen to any radio or television reports about the trial. The District Attorney General consented but both defendants opposed the jury separation on the grounds that the nature of the case and the wide-spread publicity being given to it would make it virtually impossible to avoid exposure of the jurors to improper stimuli, if allowed to mingle with the balance of the community.

The jury was brought in and the trial judge instructed them that they would be allowed to go home[1] and to return at 9:00 a. m., the next day; that they were not to talk to anyone about the case or to read any newspaper article or listen to a radio or television report about the case.

The following morning before the jury was brought in both defendants moved for a mistrial, which was overruled. Upon the jury's return to the courtroom the following transpired:

"THE COURT: Ladies and gentlemen of the jury, the Court last night allowed you to go home and instructed you not to let anybody try to influence you in any way. Has any member of this jury been contacted by a person who tried to influence you in your decision in this case, if there is such a person, would you hold up your

---

1. T.C.A. § 40 2528 is not applicable here because defendants did not consent to the jury separation.

hand? Have you read anything or heard anything that would influence you in making a fair and impartial verdict in this case? Can you tell me whether you have been influenced in any way after you left here yesterday afternoon? Well, it is all negative so I think the jury is qualified to go ahead and hear this argument."

Counsel for defendant Angel Gonzales asked and was allowed to question the jury. They were asked about exposure to newspaper stories and radio reports of the case and whether any persons had attempted to discuss the case with any juror and the responses gave no indication of improper influence. No questions were asked by the State and neither the· trial judge nor defense counsel asked any specific questions about what the jurors saw on television, if anything.

At the hearing of defendants' motion for a new trial, they supported their contention that the jury separation was prejudicial error with testimony that a movie entitled "Sybil," depicting child abuse, was shown on the NBC channel on the evening of March 7, 1978, beginning at 8:00 p. m. Prior to presenting the witness, defense counsel had told the court that they were unaware that the movie had been shown until after the trial was over. According to the witness, the movie depicted vivid scenes of abuse administered by a mother upon her daughter of tender years and the resulting adverse affect upon the child's personality in later years. The witness testified that the movie was an emotionally disturbing experience for her and she found it, "unbelievable that they showed it on T.V.—or that they would show it like that." The movie was represented as having been based upon a true story.

No evidence was offered by the State at the hearing on the motion for a new trial. The District Attorney argued that the Court had questioned the jury with the "greatest diligence" on the morning after their separation, that defendants had been given every opportunity to show prejudice, at that time, and that it was mere specula-

tion as to whether any juror had seen the movie "Sybil" or had been prejudiced thereby. ·

Affirming the trial court's refusal to grant a new trial because of the jury separation, the Court of Criminal Appeals said:

"The trial judge should not have allowed the jury to disperse during the trial but no effect on the verdict has been shown. The harmless error rule has been applied to dispersal of jurors in *Steadman v. State* [199 Tenn. 66], 282 S.W.2d 777 (1955) and *Smith v. State* [205 Tenn. 502], 327 S.W.2d 308 (1959)."

After citing and quoting extensively from *Cole v. State*, 187 Tenn. 459, 215 S.W.2d 824 (1948), the Court of Criminal Appeals concluded as follows:

"There is no proof that the verdicts were affected by any improper influence. These assignments of error are overruled."

In this Court, the State's brief relies upon three prior Court of Criminal Appeals cases that have stated the rule to be that in the absence of a showing of prejudice in the separation of the jury such separation must be held harmless error. *Wade v. State*, Tenn.Cr.App., 524 S.W.2d 497 (1975); *Wheeler v. State*, Tenn.Cr.App., 539 S.W.2d 812 (1976) and *Rushing v. State*, Tenn.Cr. App., 565 S.W.2d 893 (1977).

In the instant case the Court of Criminal Appeals' opinion does not cite any of those cases but the language used in disposing of the issue of jury separation is to the same effect, to wit: placing the burden upon defendants to affirmatively show actual prejudice during an admitted separation of the jury. We find such a deviation from the long established rules governing jury separations to be unwarranted.

## II.

One of the earliest jury separation cases in this State is that of *McLain v. State*, 18 Tenn. 241 (1837). It was established that several jurors on more than one occasion had separated from the balance of the jury,

without being under the charge of an officer. There was no effort on the part of the State to show that they had not been subjected to any improper influence while separated from officer scrutiny. The Court ordered a new trial upon the following rationale:

"That the person accused may have the full benefit of a judgment by his peers, it is absolutely necessary that the minds of the jurors should not have prejudged his case, that no impression should be made to operate on them, except what is derived from the testimony given in court, and that they should continue impartial and unbiased. These objects can only be obtained by selecting those who have no preconceived opinion as to the guilt or innocence of the prisoner, and by not permitting them to separate from each other after they have been sworn, and mingle with the balance of the community. . . . It is not necessary for the prisoner to prove that they were, during their absence, subjected to improper influence from others; it is sufficient if they might have been. There would be no safety in a different rule of practice, for it would be almost impossible ever to bring direct proof of the fact that it was done." 18 Tenn. at 241–42.

In *Hines v. State*, 27 Tenn. 597 (1848), the "settled law" applicable to jury separations was stated as follows:

"The principles laid down in these cases are, 1st, that the fact of separation having been established by the prisoner, the possibility that the juror has been tampered with, and has received other impressions than those derived from the testimony in court, exists, and *prima facie* the verdict is vicious; but, 2d, this separation may be explained by the prosecution, showing that the juror had no communication with other persons, or that such communication was upon subjects foreign to the trial, and that, in fact, no impressions other than those drawn from the testimony, were made upon his mind. But, 3d, in the absence of such explanation, the mere fact of separation is sufficient ground for a new trial." 27 Tenn. at 602.

In *Cartwright v. State*, 80 Tenn. 620 (1883) the Court made this significant observation:

"It is the opportunity of tampering with a juror, afforded by the separation which constitutes the ground for a new trial, but if such separation afforded no such opportunity, there can be no cause for a new trial." 80 Tenn. at 625.

In 1911, Mr. Justice Green, writing for the Court in *Sherman v. State*, 125 Tenn. 19, 140 S.W. 209 (1911), reviewed all of the prior significant jury separation cases and concluded that the rules announced in *McLain* and *Hines* had remained in "full force and effect ever since." *Id.* at 58, 140 S.W. at 219.

The facts and the comments of the Court in *Hickerson v. State*, 141 Tenn. 502, 213 S.W. 917 (1918), are significant to the decision of the instant case. During the trial of the case a child of one of the jurors became quite ill. The trial was suspended and the juror allowed to go home in the charge of an officer. The child died. The juror remained at his home a portion of two days and one night during which time there was evidence that he was alone with his wife out of the presence of the officer, on occasion, rode with her to the funeral where he moved around at some distance from the officer and persons spoke to him out of the officer's hearing. The officer testified that he did not think anything improper occurred and did not think anyone other than the juror's wife had talked with him. Mr. Justice Green, again writing for the Court, disposed of the case with these comments:

"It is well settled in Tennessee that the separation of the jury in a felony case, and the possibility that a juror has been tampered with and received other impressions than those derived from the testimony in court, renders the verdict *prima facie* vicious. The separation may be explained and it may be shown by the State that the separated juror had no communication with others, and that, if said communications were had, they did not relate

to the case on trial. The burden is upon the State, however, to make a satisfactory explanation. *Sherman v. State*, 125 Tenn. 19, 140 S.W. 209, and cases therein reviewed.

It is obvious that the officer in charge of the separated juror in this case made no satisfactory explanation of the matters heretofore mentioned. The officer was not positive about any of his statements, and the statements made were insufficient." 141 Tenn. at 504–05, 213 S.W. at 918.

In *Long v. State*, 132 Tenn. 649, 179 S.W. 315 (1915), the record reflected that at the end of one of the days of trial the jury was respited until the following morning " 'and by agreement of the Attorney General and the defendant and his counsel the jury was allowed to go without an officer.' " 132 Tenn. at 650, 179 S.W. at 315. The record revealed that the following day the jury reassembled in court and the case was re- sumed without objection and the record was totally silent as to the conduct of the jury during separation. Although no question was raised by the defendant during the trial or upon motion for a new trial, the Court held that under the rules established in *McLain, Hines*, and numerous interven- ing cases the verdict was ipso facto vitiated and ordered a new trial. The Court in *Long*, relying upon *McLain* and *Wesley v. State*, 30 Tenn. 502 (1851), made the follow- ing statement:

"It was also pointed out that, where the charge against the defendant was one calculated to excite the community against him, the rules of law for securing an impartial trial of the case should be firmly enforced." 132 Tenn. at 652–53; 179 S.W. at 316.

In *Steadman v. State*, 199 Tenn. 66, 282 S.W.2d 777 (1955), Mr. Justice Burnett, writing for the Court notes that *Sherman v. State, supra*, had reviewed all of the jury separation cases up to the time of that decision and then continues as follows:

"In reviewing these cases it is perfectly evident that in the course of years the courts have somewhat departed from the exceptionally harsh and extreme rule of keeping a jury in contact as was carried out in the very early years of the law, as is pointed out by this Court in *Etter v. State*, 185 Tenn. 218, 205 S.W.2d 1. We though have never departed from the rules, in reference to the separation of the jury in criminal cases, as is laid down in *Hines v. State*, 27 Tenn. 597, 601." 199 Tenn. at 70, 282 S.W.2d at 778–79.

■ We have read all of the reported cases decided by this Court and we find no departure from the rules laid down in *Hines*. Of course, Mr. Justice Burnett was correct in noting that the courts have de- parted from the early view that all twelve jurors should be within the presence of each other from the time they took the oath until they rendered their verdict. But, that change has not been accompanied by any relaxation of the *Hines* rules, as a careful reading of *Cole* will reveal. There the de- fendants "raised a presumption against a fair trial" by showing what this Court called a mere "technical" separation, which the State was able to dispel by calling elev- en of the twelve jurors. It is unnecessary, in the instant case, to define a "technical" or "minimum" separation that will trigger the *Hines* rules. Here, we are dealing with a total separation of the jury, that is, "[i]t was allowed to dissolve into its component parts, and each unit composing it to mingle at will with his fellow citizens." *Long v. State*, 132 Tenn. at 650, 179 S.W. at 315.

■ The harmless error statute, enacted in 1911, has been mentioned in some of the jury separation cases, but has never been invoked to relieve the State of the burden of affirmatively showing that no prejudice occurred during the separation, or to alter in any way the application of the *Hines* rules. E. g., *Hickerson, Steadman* and *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959).

In *Smith*, the jury was quartered for seven or eight days in a hotel across the street from the courthouse. On motion for new trial, defendants presented the testi- mony of each juror, including the thirteenth juror, and attempted to show instances of

"technical separation" as a result of their being quartered in four separate rooms, taking exercise walks and going to and from a restaurant for meals. The second aspect of defendant's attack was their attempt to show prejudice arising from the proven facts that the jurors were allowed to read newspapers, listen to the radio and watch television. In addition to the thirteen jurors, the jury officer, the hotel manager and a number of hotel employees testified. No separation, technical or otherwise, was revealed wherein any opportunity to influence the jurors was presented, other than such influence as may have arisen from reading newspapers, listening to the radio or watching television.

The jurors all testified that they had not been influenced by anything they had seen or heard outside of the courtroom. Mr. Justice Burnett, writing for the Court, said, "It is shown absolutely that nothing influenced these jurors, one way or the other." *Smith v. State*, 205 Tenn. at 528, 327 S.W.2d at 320.

Defendants relied on *Carter v. State*, 77 Tenn. 440 (1882) for the proposition that the jurors' reading of a prejudicial newspaper story about the case on trial, which was likely to interfere with the right of defendant to a fair trial, would vitiate a verdict of conviction. In response to that contention the Court said that the reading of a prejudicial article by jurors could be overcome by a showing that they were not influenced by the article and that *Carter* was written before enactment of the harmless error statute. As we read *Smith*, the Court found that every juror had affirmatively denied any influence arising from reading newspaper accounts of the trial, which overcame the *prima facie* prejudicial error in doing so and that the harmless error statute was invoked merely to bolster that finding.

■ Where the State responds to the defendant's showing that a jury separation has occurred by an explanation attempting to show that no prejudice occurred, as mandated by the *Hines* rules, the harmless error statute may be appropriately considered. Clearly, however, the harmless error statute cannot be invoked to relieve the State of the affirmative burden of showing that no prejudice occurred during a jury separation.

III.

Whether the group interrogation by the trial judge on the morning after the total jury separation would have been sufficient to carry the State's burden of overcoming the presumption of prejudice became moot after defendants produced evidence on motion for new trial about the child abuse movie.

■ The testimony about "Sybil" coupled with the fact of total separation, gave rise to the *possibility* that one or more jurors had received other impressions than those derived from the evidence adduced in court. That is the exact triggering language of *Hines*. It is beyond question that "Sybil" conveyed impressions potentially prejudicial to defendants in this case and that the nature of the charges were such as were "likely to excite the community against them." When the evidence of that possibility for prejudicial impressions was presented the burden was imposed upon the State to show that the jurors were not exposed to the movie "Sybil", or if exposed that it had no prejudicial effect upon them. No attempt was made to comply with the mandate of the *Hines* rules, and these defendants must be given a new trial.

Reversed and remanded for a new trial as to both defendants.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.