# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY SESSION, 1997

FILED

December 11, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9608-CC-00310 |
| | ) | |
| Appellee, | ) | |
| | ) | BLEDSOE COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. J. CURTIS SMITH, JUDGE |
| TRACEY PENDERGRASS, | ) | |
| | ) | |
| Appellant. | ) | (AGGRAVATED CHILD ABUSE) |

FOR THE APPELLANT:

**L. THOMAS AUSTIN**
Attorney at Law
P.O. Box 666
Dunlap, TN 37327

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**SANDY R. COPOUS**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243

**JAMES MICHAEL TAYLOR**
District Attorney General

**WILL DUNN**
Assistant District Attorney General
265 Third Avenue, Suite 300
Dayton, TN 37321

OPINION FILED _____

REMANDED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Tracey Pendergrass, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant was convicted of aggravated child abuse following a jury trial in the Circuit Court of Bledsoe County. She was sentenced to ten years as a Range I offender. The Defendant argues the following five issues in her appeal: (1) Whether the trial court abused its discretion when it allowed family members to testify as to statements made by the minor child several hours after he was injured; (2) whether the trial court abused its discretion when it allowed the attending nurse to testify as to statements made by the child which identified the Defendant as the cause of the injury; (3) whether the trial court erred when it neglected to include a lesser included offense in its charge to the jury; (4) whether the trial court abused its discretion when it refused to grant the Defendant's motion for a mistrial after four jurors were allowed to use the telephone after the case was submitted to the jury; and (5) whether the trial court erred when it imposed a sentence of ten (10) years upon the Defendant. For the reasons stated below, we remand this case to the trial court for a hearing on the issue of jury separation.

The victim in the case sub judice was the Defendant's three year-old step-son. He was brought to the Bledsoe County General Hospital with severe burns from his waist down to his toes. The burns were consistent with an "immersion burn," which is where a person is held down in a substance which results in a burn. In the case sub judice, the child was burned by scalding hot water in a bathtub. The Defendant contended that the child fell into the water on his own,

while she was not in the room. There was proof at trial that the burn was not consistent with this explanation as there was a definite line around the child's waist that was the demarcation for the burn. There were no splatter-type burns as would be expected if he had fallen into the tub.

After being brought to the Bledsoe County General Hospital, the child was then taken to T.C. Thompson Children's Hospital in Chattanooga by helicopter. He was treated for his burns at the hospital and had to be kept for twenty-one (21) days. He was given whirlpool treatments after which the boy's skin would peel and bleed. His treatment was very painful. He has permanent scarring from his waist down as a result of the burns. After being released from the hospital, physical custody of the child was granted to his paternal grandparents. He was undergoing therapy at the time of trial.

I.

The Defendant's first issue is that the trial court abused its discretion when it allowed the State's witnesses to testify as to statements made by the minor child several hours after he was injured. At trial, the victim's grandmother, Carol Pendergrass, testified that while they were at the hospital in Chattanooga several people were in the victim's room. She was standing next to her son, Bruce Pendergrass, who is also the victim's father. When he asked the victim how he got in the bathtub, the victim replied, "Mommy put me in the water." Brad Pendergrass, the victim's uncle also testified that he was in the hospital room. He heard the victim reply to Bruce Pendergrass's question as to how the accident occurred. He also heard the victim respond that his mother had put him in the

water.  There was proof at trial that the victim called his step-mother, the Defendant, "Mommy."

The Defendant argues that the trial court erred in overruling his objections to the admission of these statements.  The trial court allowed these statements into evidence under the excited utterance exception to the hearsay rule pursuant to Rule 803(2) of the Tennessee Rules of Evidence.  Rule 803(2) states that an excited utterance is, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  The Defendant argues that these statements should not have been allowed into evidence  because the statements were too remote in time from the incident.  Several hours had passed since the child was initially burned.  He had been taken to the Bledsoe County General Hospital and treated and then airlifted to Chattanooga for treatment.  The Defendant also argues that the child was given pain medication, Tylenol with codeine and three (3) milligrams of morphine, and this medication would preclude the statements from being made spontaneously or when the child was in an excited state.

The decision to apply the exception is left to the discretion of the trial judge. State v. Payton, 782 S.W.2d 490, 494 (Tenn. Crim. App. 1989).  "[T]he primary consideration [is] whether the comments are, because of the circumstances, reliable." Payton, 782 S.W.2d at 494 (citing McCormick's Law of Evidence, § 297 at 854-55; Shelton v. State, 460 S.W.2d 869 (Tenn. Crim. App. 1970)).  Our supreme court has addressed what is necessary for a statement to meet the excited utterance exception.  In State v. Smith, 857 S.W.2d 1 (Tenn.), cert. denied, 510 U.S. 996 (1993), the Tennessee Supreme Court stated:

> The ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication. See Garrision v. State, 163 Tenn. 108, 116, 40 S.W.2d 1009, 1011 (1931); Paine, Tennessee Law of Evidence, (1974), Part F. Excited utterance, § 69.

Smith, 857 S.W.2d at 9. Also, a statement, even if it is elicited by another, is admissible as an excited utterance declaration. Smith, 857 S.W.2d at 9.

In his ruling in response to the Defendant's objection to the entry of these statements as excited utterances, the trial court stated:

> I believe in the situation before the Court now there has been some several hours between the event the child was treated at the Bledsoe County Nursing Home [sic] and then transported by helicopter [to] T.C. Thompson's Children's Hospital in Chattanooga. So we have a several hours time lapse, but the circumstances which should be considered are the nature and the seriousness of the event or condition, the appearance of the declarant, the behavior of the declarant, the outlook of the declarant, and other circumstances. What we have here is a three year old child admittedly severely burned over the lower portion of the child's body. We would obviously have pain associated with what's been said to be first and second degree burns over the lower portion of the body. We have an attempted catheterization apparently unsuccessful at the Bledsoe County Hospital. We have an IV started at the Bledsoe County Hospital. We have a child, a young child, wrapped in bandages. We have a young child in a strange and probably frightening environment at the Bledsoe County ER room, emergency room. We have a child transported by helicopter to another hospital, which would be a new series of strangers. I think under these circumstances that this child still was under the stress of excitement. I think the offered evidence is an excited utterance under the hearsay exception and I'm going to allow Mrs. Pendergrass to testify in the matter as offered.

The trial court also stated that this ruling applied to Brad Pendergrass, the victim's uncle.

We do not find that the trial court abused its discretion. The child would obviously have been under a great deal of stress from the time he was burned in the bathtub throughout his treatment by many strangers at two different hospitals. There is also little danger of fabrication by a child so young in so much pain and distress. We do not find that the fact the child was given pain medication precludes the trauma and distress of the event for the child. We find that the ruling of the trial court is correct under the circumstances in the case sub judice.

Even if error, we feel it would be harmless beyond a reasonable doubt. We note from the record that several witnesses, who were called to testify by the Defendant, testified that the child stated that he had fallen into the bathtub, and not that his "Mommy" had put him into the tub. In addition, there was overwhelming proof that the child had been forcibly placed into the scalding hot water, and that Defendant was the only adult in the house at the time of the incident.

Therefore, this issue is without merit.

II.

In Defendant's second issue, she contends that the trial court erred by allowing testimony of the flight nurse regarding statements made by the victim

that, "My Mommy did it," when inquiry was made by the nurse as to, "Who did this to you?" The trial court admitted the testimony under Rule 803(2), excited utterance, and Rule 803(4), statements for purposes of medical diagnosis and treatment. The life flight nurse, Kathleen Cornett, testified at trial that before they lifted off she repeatedly asked the child what had happened to him. She finally asked him who had done that to him, and he stated that his mommy had done it. She testified that the child had been given Tylenol with codeine about an hour prior to their arrival, but it had no affect on the child. He was unresponsive to their questions. The victim was given three (3) milligrams of morphine, and subsequently became responsive.

The trial court stated these reasons for allowing Ms. Cornett's testimony of the child's statements into evidence:

> This statement of the child was actually made prior in time to the statement that was made in the presence of the grandmother later on at T.C. Thompson's Hospital. I think that the statement of the child is proper under the excited utterances exception for the same reasons that I've already outlined as relates to, I believe Mrs. Carol Pendergrass' testimony. I think under the three criteria set out in the Rucker case that it is also an exception to the hearsay rule based on the medical diagnosis and treatment in that the statement was made for the purpose of medical diagnosis and treatment, that's the first criteria.
> Number two, the medical history of the declarant past or present symptoms, pain sensation and the general character of the cause or source thereof, and it was reasonably pertinent to diagnosis and treatment. The State's arguing that as part of the diagnosis and treatment essentially the identification of child abuse is part of the diagnosis and treatment, and that is in fact what this witness has testified to.

Using the law set out above, we conclude that the trial court did not abuse its discretion in allowing Ms. Cornett to testify to the child's statement under the

excited utterance exception to the hearsay rule. The trial court's response to the Defendant's objection is correct concerning the excited utterance exception.

We now turn to whether the statement should have been allowed into evidence under the exception for statements made for medical diagnosis and treatment. The Defendant argues that the trial court abused its discretion by allowing this statement in under the medical diagnosis and treatment exception because of the child's young age, the persistent questioning by Ms. Cornett and the influence of narcotics. The proper issue is whether the statement meets the criteria set out in Rule 803(4), "[s]tatements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment." Tenn. R. Evid. 803(4).

Trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discretion. State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989). In State v. Rucker, 847 S.W.2d 512 (Tenn. Crim. App. 1992), this court stated, "[t]his Court is of the opinion that '[s]tatements made by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment.'" Rucker, 847 S.W.2d at 519-20 (quoting United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985)). It is thought that the name or identity of a perpetrator is pertinent in the diagnosis and treatment of a child abuse victim because "'there is a direct correlation between

identity and recurrence'" which often reveals a pattern of abuse. <u>Rucker</u>, 847 S.W.2d at 519 (quoting <u>State v. Maldonado</u>, 536 A.2d 600, 603 (Conn. 1988)).

Our supreme court recently addressed the issue of child abuse cases and the admissibility of statements made by children which are allowed into evidence through Tennessee Rules of Evidence Rule 803(4) in <u>State v. McLeod</u>, 937 S.W.2d 867 (Tenn. 1996). In <u>McLeod</u> our supreme court stated:

> In making the determination under Rule 803(4), trial courts must consider criteria such as the circumstances surrounding the making of the statement, which would include the timing of the statement and its contents. If the trial court finds that the statement was inappropriately influenced by another, the court should exclude it as not having been made for the purpose of diagnosis and treatment. The inquiry, however, will vary depending on the facts of each case. To illustrate: (1) the trial court may consider whether the child's statement was in response to suggestive or leading questions; and/or (2) the trial court may consider any other factor that may affect trustworthiness, such as a bitter custody battle or family feud.

<u>McLeod</u>, 937 S.W.2d at 871.

In the case <u>sub judice</u>, the trial court held a jury out hearing on the admissibility of the statement. The trial judge decided to allow the statement because, "the identification of child abuse is part of the diagnosis and treatment, and that is in fact what this witness has testified to." We do not find that the trial judge abused his discretion. He had a jury out hearing, and his reasoning is based on the same principles on which <u>Rucker</u> and <u>McLeod</u> are based.

This statement was admissible under both the excited utterance and medical diagnosis and treatment exceptions to the hearsay rule. <u>See</u> <u>State v. Maurice Gordon</u>, ___ S.W.2d ___ (Tenn. Sept. 29, 1997) (three-year-old sex

abuse victim's complaint of pain and statement of who caused the pain were admissible as both excited utterance and statement for the purpose of medical diagnosis and treatment).

Therefore, this issue has no merit.

III.

The Defendant's next issue is whether the trial court erred when it neglected to include the lesser included offense of child abuse in its charge to the jury. The jury was given an instruction for the charge of aggravated child abuse. The Defendant argues that the crime of child abuse is a lesser included offense of aggravated child abuse and should have been charged in this case.

We agree that child abuse is a lesser included offense of aggravated child abuse. The Defendant relies upon State v. Howard, 926 S.W.2d 579 (Tenn. Crim. App. 1996), in support of her argument that the trial court committed reversible error by failing to charge the jury on the lesser included offense of child abuse. However, in Howard, this court recognized the established law that when the proof shows that either the indicted offense occurred or no offense occurred, then the trial court is not required to charge the lesser included offense. Howard, 926 S.W.2d at 586.

At the time of the offense, aggravated child abuse was defined in Tennessee Code Annotated section 39-15-402 as follows: "(a) A person is guilty of the offense of aggravated child abuse who commits the offense of child abuse

as defined in § 39-15-401 and: (1) the act of abuse results in serious bodily injury to the child;. . . ."

Also at the time of the offense, Tennessee Code Annotated section 39-15-401 defines child abuse as, "(a)  Any person who knowingly, other than by accidental means, treats a child under  eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare is guilty of a Class A misdemeanor."

The indictment in Defendant's case charged that she did ". . .unlawfully, knowingly, and other than by accidental means, inflict injury upon [victim], a child under eighteen (18) years of age, such act resulting in serious bodily injury, in violation of T.C.A. § 39-15-402. . . ."

It is clear from both the allegations in the indictment, and the proof at trial, that what made this particular offense aggravated child abuse, was the serious bodily injury inflicted upon the victim.

Tennessee Code Annotated section 39-11-106(a)(33) defines serious bodily injury as follows:

(33) "Serious bodily injury" means bodily injury which involves:

  (A) A substantial risk of death;
  (B) Protracted unconsciousness;
  (C) Extreme physical pain;
  (D) Protracted or obvious disfigurement; or
  (E) Protracted loss or substantial impairment
     of a function of a bodily member, organ,
     or mental faculty;

The Defendant's theory at trial, including her testimony, was that the injuries suffered by the victim were as a result of the victim accidentally falling into the scalding water. As observed in the statute defining aggravated child abuse, which incorporates the definition of child abuse, an accidental injury is a defense to the criminal charge. There was uncontradicted and uncontested proof at trial that the victim had a protracted and obvious disfigurement as a result of scarring from his waist down, that he suffered extreme physical pain, and that the injury posed a substantial risk of death. While Defendant offered proof to contradict evidence of how well the victim had recovered, this proof did not contradict the proof of serious bodily injury.

The Defendant argues that proof of bruises on the victim's chest, back, face, and whip marks across his buttocks required the trial court to charge the lesser included offense of child abuse. She bases this argument on the theory that the jury could believe the burns were caused by accidental means, but could still convict the Defendant on the lesser included offense of child abuse based upon the proof of the bruises.

However, our review of the record requires us to reject Defendant's argument. Dr. William Belknap, a pediatrician who examined the victim at the Chattanooga hospital on the night of the incident testified that bruising on the child was consistent with the restraining type of hold that the medical personnel thought had occurred during the victim's immersion into the scalding water. Specifically, the doctor testified:

> An immersion injury appearance taken together with bruising and also in addition noting that the knees were flexed, the legs were flexed at the knees indicated to us that an individually clearly had held the child somewhere about the trunk and actually had dipped the child in the scalding water to achieve this kind of an injury and we felt most compelled to make that conclusion based on the observation of the bruising.

Also, Dr. Belknap noted that the bruising about the victim's face was most consistent with a restraining type of hold necessary to immerse someone into scalding water. The smaller bruises were approximately the size of fingertips.

While it is not clear from the record how the whip marks across the victim's buttocks would have been caused by the immersion of the victim into the bathtub, we note there was no proof in the record by circumstantial or direct evidence that Defendant had caused the whip mark bruising on the victim's buttocks. The only proof in the record regarding the cause of the whip mark bruising on the buttocks, including the Defendant's testimony, was that her husband had whipped the child with a belt a day or two before the child was burned in the water. The Defendant also offered proof that the other bruising on the child was as a result of the child accidentally falling in the bathroom on an earlier occasion and from the child possibly being struck by another child at an overnight church related "lock-in."

-13-

The Defendant concluded her direct testimony by stating the entire incident was an accident, and she would do nothing to hurt any of her children.

In her argument on this issue, the Defendant wants to focus on some injuries, the bruises, and separate them for consideration from the burn injuries. The State's proof was that all the bruises, except for the whip marks on the buttocks, were consistent with a restraining hold by the perpetrator who immersed the child into the hot water. There is no proof that the Defendant herself inflicted the whip marks on the buttocks area. The Defendant's proof was that bruising on the buttocks was caused by the Defendant's husband, and other bruises were not caused by the Defendant, but by accidental means.

In the case sub judice under the proof presented at trial, the Defendant could be guilty of the greater offense of aggravated child abuse, or no offense at all. In such situations, it is not error for the trial court to refuse to charge the lesser offense. Whitwell v. State, 520 S.W.2d 338, 344 (Tenn. 1975); State v. Atkins, 681 S.W.2d 571, 577 (Tenn. Crim. App. 1984), cert. denied, 470 U.S. 1028 (1985).

Accordingly, this issue is without merit.

IV.

-14-

The Defendant's fourth issue is whether the trial court abused its discretion when it refused to grant Defendant's motion for a mistrial after four jurors were allowed to use the telephone during the course of the jury's deliberations. The jury began deliberations at approximately 3:30 p.m. During the supper break, at around 7:50 p.m., a few of the jurors wanted to make calls to make arrangements for staying over another night. The jury was sequestered.

In Gonzales v. State, 593 S.W.2d 288 (Tenn. 1980), our supreme court stated:

> In Hines v. State, 27 Tenn. 597 (1848), the "settled law" applicable to jury separations was stated as follows:
> "The principles laid down in these cases are, 1st, that the fact of separation having been established by the prisoner, the possibility that the juror has been tampered with, and has received other impressions than those derived from the testimony in court, exists, and prima facie the verdict is vicious; but, 2d, this separation may be explained by the prosecution, showing that the juror had no communication with other persons, or that such communication was upon subjects foreign to the trial, and that, in fact, no impressions other than those drawn from the testimony, were made upon his mind. But, 3d, in the absence of such explanation, the mere fact of separation is sufficient ground for a new trial." 27 Tenn. at 602.

Gonzales, 593 S.W.2d at 291. This passage of Gonzales was also cited with approval in State v. Furlough, 797 S.W.2d 631, 645 (Tenn. Crim. App. 1990). After the State meets its affirmative burden that no prejudice occurred, a harmless error analysis is permitted. Furlough, 797 S.W.2d at 645; Gonzales, 593 S.W.2d at 293.

-15-

The Defendant orally moved for a mistrial immediately after the jury returned with the verdict, at about 8:10 p.m., and a hearing on the matter was held immediately. The officers who had taken the jurors to make their phone calls testified. Deputy Sheriff Mel Matthews testified that the jurors wanted to make phone calls to make arrangements for the night. He was in the room while they were calling, but did not hear any portions of the conversations. One of the court officers, Tammy Turner, also testified at the hearing. The phone the jurors used was at her desk. On direct examination by the Defendant, she stated that two women and two men made the calls. During cross-examination by the State, she testified that she heard the whole conversations, and "Everyone said I need you to bring clothes, put 'em in my car, I don't know when I'll be home, bye." On redirect, the officer stated that she did not know what was being said on the other end of the telephone conversations. Sheila Johnson, another court officer, stated that what the previous two witnesses had testified to was the same as her recollection of the events. On cross-examination by the State, she stated that the conversations were very short, and she did not see the jurors arguing with anyone. The trial court ruled, "I do not find that there's been anything improper. I don't find any prejudice to the defendant as far as the activities of the jury. I'll overrule the motion."

In making its ruling, the trial court used an erroneous test to consider the Defendant's motion for mistrial. As stated above in Gonzales, once there has been a jury separation during sequestration, and in this case during the jury's deliberations, the possibility that the juror has been tampered with and received impressions other than those derived from the testimony exists and the verdict is prima facie "vicious." However, the prosecution should be allowed the

-16-

opportunity to show that all of the communications to each juror were upon subjects not involving the trial and that no impressions other than those drawn from the testimony were made upon the juror's mind. If there is an absence of such explanation, the mere fact of the separation is sufficient grounds for granting the motion for a new trial. Gonzales, 593 S.W.2d at 291 (quoting Hines v. State, 27 Tenn. 597, 602 (1848)).

In this case the jury separation occurred only a few moments before the jury returned with its verdict. After the jury reported its verdict, the trial court dismissed the jury. Defendant's counsel promptly made the motion for mistrial, indicating that he had brought the possibility of jury separation to the attention of the court a few moments before and had intended to have a hearing on the record prior to the jury returning its verdict.

The trial court, as stated above, issued its ruling after the Defendant had put on her proof showing a separation of the jury, but based its ruling upon an improper standard. The State is entitled to offer whatever proof which may be available to show that any communications made to the jurors during the phone conversations were upon matters not pertaining to the trial, and that the jurors did not obtain any impressions other than those drawn from the testimony. Even if we suspect that those people who spoke with the jurors did not speak of matters pertaining to the trial, or make any impressions upon the jurors which affected the verdict, we are unable to make such an assumption under the mandates of Gonzales.

Therefore, it is necessary for the judgment to be vacated and this matter remanded to the trial court solely for an evidentiary hearing and decision by the trial court on the issue of jury separation in a manner consistent with this opinion. If the trial court finds that all of the jurors' communications were on subjects foreign or upon subjects not pertaining to the trial and that no impressions were made upon the jurors in reaching the verdict other than the proof heard at trial, and after making this determination that no prejudice occurred to the Defendant, the judgment shall be reinstated. Absent such a finding by the trial court, the trial court shall grant the Defendant a new trial. The Defendant can appeal from an adverse decision on this issue.

V.

The Defendant's final issue is whether the trial court erred by imposing a sentence of ten (10) years. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct

-18-

involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A.

The Defendant first argues that the trial court erred when it used essential elements of the crime as enhancing factors. The Defendant argues that enhancement factor (4), the victim was particularly vulnerable because of age or physical or mental disability, factor (5), the defendant treated or allowed the victim to be treated with exceptional cruelty, and factor (6), personal injuries inflicted upon the victim were particularly great, are all inherent in the offense, and cannot be used to enhance the Defendant's sentence. Tenn. Code Ann. § 40-35-114 (4), (5) & (6).

The statute under which the Defendant was convicted provides that, "[a] person is guilty of the offense of aggravated child abuse who commits the offense of child abuse as defined in § 39-15-401 and :(1) The act of abuse results in

-19-

serious bodily injury to the child." Tenn. Code Ann. § 39-15-402. Tennessee Code Annotated section 39-15-401 states that child abuse is "[a]ny person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare."

We first address enhancement factor (4), the victim was particularly vulnerable because of age or physical or mental disability. Our supreme court has stated that this enhancement factor, "relate[s] more to the natural physical and mental limitations of the victim than merely to the victim's age." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Therefore, factor (4) is not inherent in an offense based on the age of a victim. In State v. Andrew Johnson, III, No. 02C01-9304-CR-00050, Shelby County (Tenn. Crim. App, Jackson, filed April, 20, 1994), perm. to appeal denied, (Tenn. 1994), the defendant was convicted of the aggravated rape of his four-year-old daughter. This court held that factor (4) applied because the four-year-old was home alone and in the sole care of the defendant when the crime occurred. The court went on to say, "[i]t would be ludicrous to say that she was capable of resisting the assault of her adult father. There was no one in the house or otherwise available to help her." Johnson, slip. op. at 4. The victim did testify in Johnson, but this court stated that it was with extreme difficulty.

The Supreme Court of Tennessee recently addressed this issue again in State v. Poole, 945 S.W.2d 93 (Tenn 1997). The court reiterated the requirement that the State has the burden of proving a victim's limitations causing the victim to be particularly vulnerable and cited Adams in support thereof. The supreme

court also held the trial court must make factual findings whether the evidence with regard to the victim's age demonstrated an ability to resist the crime, summon help, or testify at a later date. Poole, 945 S.W.2d at 96.

In Defendant's case, the trial court noted that the victim was three (3) years old at the time of the offense and discussed case law in Tennessee which speaks in terms of youthful age precluding a victim from resisting or calling for help or being capable of testifying. The trial court specifically referred to Adams among other cases in determining that this enhancement factor applied. The record reflects that the victim was left alone with the Defendant, his step-mother, and that the offense occurred during a time period when the victim's father was away from the home at work. There was no one present to help the victim and the victim was unable to resist the abuse inflicted upon him by the Defendant. We find that this enhancement factor was appropriately applied by the trial court and that the trial court made sufficient findings in the record to support application of this enhancement factor.

Regarding factor (5), that the Defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense, the trial court relied upon the fact that the victim was forcibly held in extremely hot water to support application of this enhancement factor. On appeal, the State relies upon evidence of bruises on the victim's face and bottom, and well as the burn injuries in support of application of this enhancement factor. However, when the very facts which caused the crime to be aggravated under the law are also used to support the finding of "exceptional cruelty," our court has held that the enhancement factor could not be applied. Manning v. State, 883 S.W.2d 635,

639 (Tenn. Crim. App. 1994). Therefore, we agree with Defendant that enhancement factor (5) is not applicable. Likewise, proof of serious bodily injury also constitutes proof of particularly great injury and enhancement factor (6) should not have been applied. State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994); State v. Crowe, 914 S.W.2d 933, 939-40 (Tenn. Crim. App. 1995).

The State argues that application of enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, is applicable in this case. We respectfully disagree. There was proof in the record from a physician who treated the child that extensive burns on the victim's body were potentially fatal. However, "a substantial risk of death" is one of the definitions of "serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(33). A fair review of the record clearly shows that proof of "a substantial risk of death" was one of the factors relied upon by the State in proving "serious bodily injury" to sustain a conviction of aggravated child abuse. We therefore conclude that factor (10) is an essential element of the offense as charged in the indictment and should not be included as an enhancement factor. We find that only enhancement factor (4) applies to the Defendant's sentence.

B.

Defendant argues that the trial court erred by failing to apply the following mitigating factors from Tennessee Code Annotated section 40-35-113:

(3)    Substantial grounds exist tending to excuse or justify
       the defendant's criminal conduct, though failing to
       establish a defense.

(8)  The defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;

(11)  The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct;

(12)  The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime;

(13)  Any other factor consistent with the purposes of this chapter.
[Defendant urges her lack of a prior criminal record, attendance at church, and other "good character evidence" submitted at the sentencing hearing would make this mitigating factor applicable.]

We agree with the State and the trial court that factors (3), (8), (11), and (12) do not apply in this case. Actually, the record is devoid of any proof whatsoever to support any of these mitigating factors. The trial court heard the testimony of all of the witnesses and found that the only "catch-all" mitigating factor under (13) which might be applicable would be the fact that the Defendant does not have a prior criminal record. However, in this particular case, the trial court held that this factor should be given little weight in sentencing Defendant, and we agree.

The trial court specifically found that any one of the enhancement factors it believed were applicable would support a sentence above the minimum presumptive sentence of eight (8) years, in light of the fact that the one mitigating factor which was applicable should be given very little weight.

Having found that one (1) enhancement factor is applicable, and that one (1) mitigating factor is applicable, but that the mitigating factor should be given very little weight, and being in agreement with the trial court that any one of the enhancement factors found by that court should be afforded great weight in this particular case, we conclude that the record supports the sentence imposed by the trial court. Therefore, this issue is without merit.

## CONCLUSION

We vacate the judgment and remand this case to the trial court solely for an evidentiary hearing and decision by the trial court on the issue of jury separation in accordance with this opinion. All other issues raised by the Defendant are overruled.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
JERRY L. SMITH, Judge